James H. Hohenstein
Marie E. Larsen
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, New York 10019
Telephone: 212-513-3200
Telefax: 212-385-9010
Email: jim.hohenstein@hklaw.com
       marie.larsen@hklaw.com

*Attorneys for Plaintiffs*
*APL Co. Pte Ltd and American President*
*Lines, Ltd.*

```
┌─────────────────────────┐
│  R E C E I V E D        │
│      JAN 28 2015        │
│   U.S.D.C. S.D. N.Y.    │
│      CASHIERS           │
└─────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

APL CO. PTE LTD and AMERICAN PRESIDENT
LINES, LTD., individually and on behalf of
M/V APL SALALAH (IMO No. 9462029),
M/V APL ENGLAND (IMO No. 9218650),
M/V APL OAKLAND (IMO No. 9332250),
M/V APL SOUTHHAMPTON (IMO No. 9462017),
M/V APL THAILAND (IMO No. 9077123),
M/V APL CHINA (IMO No. 9074389),
M/V APL EGYPT (IMO No. 9196905),
M/V APL PHILIPPINES (IMO No. 9077276), and,
M/V APL YANGSHAN (IMO No. 9462031),

                              Plaintiffs,

       - against -

O.W. BUNKER FAR EAST (SINGAPORE) PTE.
LTD, O.W. BUNKER USA INC., O.W. BUNKER
NORTH AMERICA INC., WESTOIL MARINE
SERVICES, INC., ING BANK N.V.

                              Defendants.

_____

15 Civ. _____ (    )


**COMPLAINT**
**FOR INTERPLEADER**


 

       Plaintiffs APL Co. Pte Ltd ("APL Co") and American President Lines, Ltd. ("APLines")

(collectively, "APL" or "Plaintiffs"), by and through their attorneys Holland & Knight LLP,

bring this action pursuant to Rule 9(h), as and for their Complaint for Interpleader pursuant to 28 U.S.C. §§ 1335(a) and 2361 and allege, upon information and belief, as follows:

## THE PARTIES

1.      APL Co is a foreign corporation or business entity organized and existing pursuant to the laws of Singapore, with an office and place of business at 9 North Buona Vista Dr. #14-01, The Metropolis Tower 1 SG 138588.

2.      APLines is a corporation organized and existing pursuant to the laws of Delaware with an office and place of business at 16220 N. Scottsdale Road, Suite 300, Scottsdale, Arizona 85254.

3.      Defendant O.W. Bunker Far East (Singapore) Pte. Ltd. ("O.W. Far East) is a corporation or business entity organized and existing pursuant to the laws of Singapore, with an office and place of business at 300 Beach Road, #32-01/03, The Concourse, Singapore 199555.

4.      Defendant O.W. Bunker USA Inc. ("O.W. USA") is a corporation or business entity organized and existing pursuant to the laws of Texas, with an office and place of business at 2603 August Drive, Suite 440, Houston, Texas 77057.

5.      Defendant O.W. Bunker North America Inc. ("O.W. North America") is a corporation or business entity organized and existing pursuant to the laws of Connecticut, with an office and place of business at 281 Tresser Blvd., 2 Stamford Plaza, 15th Floor, Stamford, Connecticut 06901.

6.      Defendant Westoil Marine Services, Inc. ("Westoil") is a corporation or business entity organized and existing pursuant to the laws of California, with an office and place of business at 1610 Barracuda Street, San Pedro, California 90731.

7.    Defendant ING Bank N.V. ("ING") is a bank organized and existing pursuant to the laws of the Netherlands with an office and place of business located at Amsterdamse Poort, Bijlmerplein 888, 1102 MG Amsterdam, The Netherlands.

## JURISDICTION AND VENUE

8.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1333 and Fed. R. Civ. P. 9(h),  inasmuch as it involves the interpleader of funds in the possession of APL for the payment pursuant to a bunker supply contract for the provision of necessaries (i.e., fuel oil or bunkers) to the following vessels: 1) APL Salalah (IMO No. 9462029); 2) APL England (IMO No. 9218650); 3) APL Oakland (IMO No. 9332250); 4) APL Southampton (IMO No. 9462017); 5) APL Thailand (IMO No. 9077123); 6) APL China (IMO No. 9074389); 7) APL Egypt (IMO No. 9196905); 8) APL Philippines (IMO No. 9077276); and 9) APL Yangshan (IMO No. 9462031) (collectively, the "Vessels").

9.    This Court has original jurisdiction over this interpleader action pursuant to 28 U.S.C. § 1335(a) in that for the bunker payments in question: (a) at least two of the claimants are of diverse citizenship; (b) the disputes between the claimants each involve funds in an amount exceeding $500.00, exclusive of interest and costs; and (c) Plaintiffs, on behalf of the Vessels are the stakeholders of the funds and, concurrently with the filing of this Complaint, will seek to make a deposit in the Court's Registry in the principal sum of at least $10,509,510.53, which is the amount due for nine fuel deliveries to the Vessels between October 8, 2014 through November 3, 2014.   Additionally, APL will seek to deposit an interest component to the principal sum in the amount of $630,570.63 for a total deposit of $11,140,081.16.

10.     This Court has personal jurisdiction over defendants O.W. Far East, O.W. USA and O.W. North America pursuant to the terms of the applicable bunker supply contracts and O.W. Group Standard Terms and Conditions.

11.     This Court also has personal jurisdiction over defendants O.W. USA, O.W. North America and Westoil pursuant to 28 U.S.C. § 2361.

12.     This Court has personal jurisdiction over ING to the extent it is or may be a third-party beneficiary of the bunker supply contracts at issue in this dispute and to the extent that it is an alleged assignee of the receivables of O.W. Far East and/or O.W. USA and/or O.W. North America.  Additionally, ING transacts business within the jurisdiction of this Court and has a place of business at 1325 Avenue of the Americas, New York, New York 10019.

13.     Venue is properly laid in this Court pursuant to 28 U.S.C. § 1397.

## NATURE OF ACTION

14.     This is an action for interpleader with respect to the principal sum of $10,509,510.63, representing the amount due for the supply of bunkers to the Vessels.  With respect to payment for such supply, O.W. Far East, O.W. USA, O.W. North America, Westoil, ING or some other third party have and  may have conflicting claims as to ownership of the fuel payment funds owed by APL for the purchase of and  receipt of a specific and finite quantity of bunkers (fuel) in the Port of San Pedro, California by the Vessels (the "Fuel Deliveries").

## FACTUAL BACKGROUND

### FACTS COMMON TO ALL THE FUEL DELIVERIES

15.     APL is engaged in what is known as the "liner" trades.  Essentially, this means running a regular, scheduled service of container ships between various ports throughout the

world.  APL owns and operates or time charters approximately 150 container ships:  under either means of use of the ships, APL is responsible for the provision of bunkers to the vessels.

16.     Among the ports regularly called by the APL vessels is San Pedro, California, as its wholly-owned subsidiary Eagle Marine Services, Ltd. operates a container terminal facility at that port.  The APL ships also regularly call at Oakland, California as well as other ports in the United States.

17.     Given that the APL vessels regularly call at San Pedro, it is also often a site for bunkering  the APL vessels.

18.     Among the bunker suppliers with whom APL Co had regular dealings was O.W. Far East.  APL Co used O.W. Far East to arrange for the supply of bunkers to ships it owned and/or time chartered as well as those owned and/or time chartered by its affiliate, APLines.

19.     As a result of the worldwide collapse of the various companies of the O.W. Bunker group, the Fuel Deliveries have resulted in a number of competing potential *in personam* and *in rem* claims directed at APL Co and APLines.

20.     For example, by way of a letter dated November 13, 2014 addressed to APL Co, ING has demanded direct payment to it of numerous O.W. Far East invoices, including the deliveries (as detailed below) to APL Salalah (invoice number 197-1410058, attached hereto as Exhibit 6), APL England (invoice number 197-1410078, attached hereto as Exhibit 9), APL Oakland (invoice numbers 197-1410056 and 197-1410056A, attached hereto as Exhibit 12), APL Southampton (invoice number 197-1410065, attached hereto as Exhibit 15)  and APL Thailand (invoice number 197-1410066, attached hereto as Exhibit 18).  A true and correct copy of  ING letter is attached hereto as Exhibit 1.

21.     As also will be evident below, Westoil's barges were engaged by O.W. North America to transport the Fuel Deliveries to the APL Vessels.  It further appears that Westoil was not paid for its barging services.  In that regard, APL has received letters (both dated January 7, 2015) from Westoil demanding payment (under threat of arrest) for its services provided to the vessels APL China and APL Yangshan.  A true and correct copy of the Westoil letters are attached hereto as Exhibit 2.

22.     Further, counsel for O.W. USA and O.W. North America, by way of letter to undersigned counsel dated  January 26, 2015,  have  placed  APL Co on notice that those companies intend  to arrest the Vessels as security for their alleged maritime lien claims.  Of particular note is the listing of the Vessel's calls, all in the very near term, at Los Angeles (San Pedro) and Oakland, California.  A true and correct copy of counsel's letter is attached hereto as Exhibit 3.

## APL SALALAH

23.     APL Co is the bareboat charterer of APL Salalah.

24.     On or about September 24, 2014, APL Co ordered bunkers to be loaded onboard and consumed by the vessel APL Salalah from O.W. Far East.  O.W. Far East is apparently a corporate affiliate of O.W. USA and O.W. North America.  The bunkers were to be supplied to the APL Salalah within the Port of San Pedro on October 6, 2014.  A true and correct copy of the Sales Order Confirmation received from O.W. Far East is attached hereto as Exhibit 4.  On this document, the "supplier" is identified as O.W. USA.

25.     The bunkers were delivered to the vessel APL Salalah on October 8, 2014.  A bunker delivery receipt was issued by O.W. North America.  A true copy of the bunker delivery receipt is attached hereto as Exhibit 5.

26.     The bunker delivery receipt notes that the bunkers were transported by Westoil's bunkering barge, LILY BLAIR.

27.     An invoice was issued to APL Co on October 8, 2014 by O.W. Far East for the supply of bunkers to APL Salalah.  The invoice directs payment of $2,397,383.70 to O.W. Far East, to an ING account.  A true copy of the bunker invoice is attached hereto as Exhibit 6.

## APL ENGLAND

28.     APL Co is the bareboat charterer of APL England.

29.     On or about September 25, 2014 APL Co ordered bunkers to be loaded onboard and consumed by the vessel APL England from O.W. Far East.  The bunkers were to be supplied to the APL England within the Port of San Pedro on October 6, 2014.  A true and correct copy of the Sales Order Confirmation received from O.W. Far East is attached hereto as Exhibit 7.  On this document, the "supplier" is identified as O.W. USA.

30.     The bunkers were delivered to the vessel APL England on October 13, 2014.  A bunker delivery receipt was issued by O.W. North America.  A true copy of the bunker delivery receipt is attached hereto as Exhibit 8.

31.     The bunker delivery receipt notes that the bunkers were transported by Westoil's bunkering barge, ANNE ELIZABETH.

32.     An invoice was issued to APL Co on October 13, 2014 by O.W. Far East for the supply of bunkers to APL England.  The invoice directs payment of $1,231,555.22 to O.W. Far East, to an ING account.  A true copy of the bunker invoice is attached hereto as Exhibit 9.

## APL OAKLAND

33.     APL Co is the time charterer of APL Oakland.

34.    On or about October 3, 2014 APL Co ordered bunkers to be loaded onboard and consumed by the vessel APL Oakland from O.W. Far East.  The bunkers were to be supplied to the APL Oakland within the Port of San Pedro on October 13, 2014.  A true and correct copy of the Sales Order Confirmation received from O.W. Far East is attached hereto as Exhibit 10.  On this document, the "supplier" is identified as O.W. USA.

35.    The bunkers were delivered to the vessel APL Oakland on October 14, 2014.  A bunker delivery receipt was issued by O.W. North America.  A true copy of the bunker delivery receipt is attached hereto as Exhibit 11.

36.    The bunker delivery receipt notes that the bunkers were transported by Westoil's bunkering barge, DAVID FANNING.

37.    Two invoices were issued to APL Co on October 14, 2014 by O.W. Far East for the supply of bunkers to APL Oakland.  The invoices direct payment of $1,015,137.20 and $63,886.00, for the delivery of Fueloil and Gasoil, respectively, to O.W. Far East to an ING account.  True copies of the bunker invoices are attached hereto as Exhibit 12.

**APL SOUTHAMPTON**

38.    APL Co is the bareboat charterer of APL Southampton..

39.    On or about October 3, 2014 APL Co ordered bunkers to be loaded onboard and consumed by the vessel APL Southampton from O.W. Far East.  The bunkers were to be supplied to the APL Southampton within the Port of San Pedro on October 14, 2014.  A true and correct copy of the Sales Order Confirmation received from O.W. Far East is attached hereto as Exhibit 13.  On this document, the "supplier" is identified as O.W. USA.

40.     The bunkers were delivered to the vessel APL Southampton on October 15, 2014. A bunker delivery receipt was issued by O.W. North America.  A true copy of the bunker delivery receipt is attached hereto as Exhibit 14.

41.     The bunker delivery receipt notes that the bunkers were transported by Westoil's bunkering barge, ANNE ELIZABETH.

42.     An invoice was issued to APL Co on October 15, 2014 by O.W. Far East for the supply of bunkers to APL Southampton.  The invoice directs payment of $1,607,276.45 to O.W. Far East, to an ING account.  A true copy of the bunker invoice is attached hereto as Exhibit 15.

### APL THAILAND

43.     APLines is the beneficial owner and time charterer of APL Thailand.

44.     On or about October 3, 2014 APL Co and/or APLines ordered bunkers to be loaded onboard and consumed by the vessel APL Thailand from O.W. Far East.  The bunkers were to be supplied to the APL Thailand within the Port of San Pedro on October 15, 2014.  A true and correct copy of the Sales Order Confirmation received from O.W. Far East is attached hereto as Exhibit 16.  On this document, the "supplier" is identified as O.W. USA.

45.     The bunkers were delivered to the vessel APL Thailand on October 15, 2014.  A bunker delivery receipt was issued by O.W. North America.  A true copy of the bunker delivery receipt is attached hereto as Exhibit 17.

46.     The bunker delivery receipt notes that the bunkers were transported by Westoil's bunkering barge, LILY BLAIR.

47.     An invoice was issued to APL Co on October 15, 2014 by O.W. Far East for the supply of bunkers to APL Thailand.  The invoice directs payment of $1,014,947.63 to O.W. Far East, to an ING account.  A true copy of the bunker invoice is attached hereto as Exhibit 18.

## APL CHINA

48.     APLines is the beneficial owner and time charterer of APL China.

49.     On or about October 14, 2014 APL Co and/or APLines ordered bunkers to be loaded onboard and consumed by the vessel APL China from O.W. Far East.  The bunkers were to be supplied to the APL China within the Port of San Pedro on October 21, 2014.  A true and correct copy of the Sales Order Confirmation received from O.W. Far East is attached hereto as Exhibit 19.  On this document, the "supplier" is identified as "OW".

50.     The bunkers were delivered to the vessel APL China on October 22, 2014.  A bunker delivery receipt was issued by O.W. North America.  A true copy of the bunker delivery receipt is attached hereto as Exhibit 20.

51.     The bunker delivery receipt notes that the bunkers were transported  by Westoil's bunkering barge, HANNAH 2801.

52.     An invoice was issued to APL Co on October 22, 2014 by O.W. Far East for the supply of bunkers to APL China.  The invoice directs payment of $818,893.25 to O.W. Far East, to an ING account.  A true copy of the bunker invoice is attached hereto as Exhibit 21.

## APL EGYPT

53.     APL Co is the time charterer of APL Egypt.

54.     On or about October 17, 2014 APL Co ordered bunkers to be loaded onboard and consumed by the vessel APL Egypt from O.W. Far East.  The bunkers were to be supplied to the APL Egypt within the Port of San Pedro on October 27, 2014.  A true and correct copy of the Sales Order Confirmation received from O.W. Far East is attached hereto as Exhibit 22.  On this document, the "supplier" is identified as O.W. USA.

55.     The bunkers were delivered to the vessel APL Egypt on October 27, 2014.  A bunker delivery receipt was issued by O.W. North America.  A true copy of the bunker delivery receipt is attached hereto as Exhibit 23.

56.     The bunker delivery receipt notes that the bunkers were transported by Westoil's bunkering barge, DAVID FANNING.

57.     An invoice was issued to APL Co on October 27, 2014 by O.W. Far East for the supply of bunkers to APL Egypt.  The invoice directs payment of $957,212.39 to O.W. Far East, to an ING account.  A true copy of the bunker invoice is attached hereto as Exhibit 24.

### APL PHILIPPINES

58.     APLines is the beneficial owner and time charterer of APL Philippines.

59.     On or about October 20, 2014 APL Co and/or APLines ordered bunkers to be loaded onboard and consumed by the vessel APL Philippines from O.W. Far East.  The bunkers were to be supplied to the APL Philippines within the Port of San Pedro on October 29, 2014.  A true and correct copy of the Sales Order Confirmation received from O.W. Far East is attached hereto as Exhibit 25.  On this document, the "supplier" is identified as O.W. USA.

60.     The bunkers were delivered to the vessel APL Philippines on October 29, 2014.  A bunker delivery receipt was issued by O.W. North America.  A true copy of the bunker delivery receipt is attached hereto as Exhibit 26.

61.     The bunker delivery receipt notes that the bunkers were transported by Westoil's bunkering barge, DAVID FANNING.

62.     An invoice was issued to APL Co on October 30, 2014 by O.W. Far East for the supply of bunkers to APL Philippines.  The invoice directs payment of $1,263,332.29 to O.W. Far East, to an ING account.  A true copy of the bunker invoice is attached hereto as Exhibit 27.

## APL YANGSHAN

63.    APL Co is the bareboat charterer of APL Yangshan.

64.    On or about October 28, 2014 APL Co ordered bunkers to be loaded onboard and consumed by the vessel APL Yangshan from O.W. Far East. The bunkers were to be supplied to the APL Yangshan within the Port of San Pedro on November 3, 2014. A true and correct copy of the Sales Order Confirmation received from O.W. Far East is attached hereto as Exhibit 28. On this document, the "supplier" is identified as O.W. USA.

65.    The bunkers were delivered to the vessel Yangshan on November 3, 2014. A bunker delivery receipt was issued by O.W. North America. A true copy of the bunker delivery receipt is attached hereto as Exhibit 29.

66.    The bunker delivery receipt notes that the bunkers were transported by Westoil's bunkering barge, DAVID FANNING.

67.    APL has not received a formal invoice for the supply of bunkers to APL Yangshan. However, based on the pricing listed on the Sales Order Confirmation and the quantity of bunkers delivered as reflected on the bunker delivery receipt, the sum of $139,886.40 is owed for the supply of these bunkers.

## FURTHER FACTS COMMON TO ALL THE FUEL DELIVERIES

68.    The standard terms and conditions of all OW Bunker entities for the sale of bunkers includes clause P.5: "Without prejudice to any other Clause herein any disputes and/or claims arising in connection with these conditions and/or any Agreement governed by them, any dispute and/or claim aris[ing] in connection with a Vessel detained by Seller at any port, place or anchorage within the United States shall be submitted to the United States District Court for the

Southern District of New York." A true copy of the OW Bunker terms is attached hereto as Exhibit 30.

69.     On November 7, 2014, O.W. Bunker AS ("O.W. Denmark") and certain of its Danish subsidiaries and affiliates filed for bankruptcy in their home jurisdiction of Denmark. Thereafter many other O.W. entities and/or affiliates filed for bankruptcy in various other jurisdictions around the world. No foreign O.W. bankruptcy proceeding has been recognized in the United States pursuant to Chapter 15 of the U.S. Bankruptcy Code.

70.     On November 13, 2014 KPMG Services Pte. Ltd. were appointed as the Provisional Liquidators of O.W. Far East.

71.     On November 13, 2014, O.W. USA, O.W. North America and O.W. Holding North America Inc. ("O.W. Holding") all filed voluntary petitions pursuant to Chapter 11 in the United States Bankruptcy Court for the District of Connecticut as Case Nos. 14-51720, 14-51721 and 14-51722.[1]

72.     Pursuant to an Omnibus Security Agreement dated December 19, 2013 between O.W. Bunker & Trading A/S and its subsidiaries (believed to include O.W. Far East, O.W. USA and O.W. North America), and ING as Security Agent, the O.W. entities have allegedly assigned certain rights in respect of their supply contracts as security to ING.

73.     Due to the bankruptcy filings of O.W. Denmark, O.W. Far East, O.W. USA, O.W. North America, O.W. Holding, other O.W. group entities, O.W. Far East, O.W. USA, O.W.

---

[1] Plaintiffs respectfully submit that this interpleader action does not violate the automatic stay imposed by the Bankruptcy Code, 11 U.S.C. § 362. *See Price & Pierce Int'l, Inc. v. Spicers Int'l Paper Sales, Inc.*, 50 B.R. 25, 26 (S.D.N.Y. 1985) (as debtor was in reality nominal defendant in interpleader action, interpleader action did not violate automatic stay). O.W. Debtors and counsel to the Unsecured Creditors Committee have expressly stated to this Court that they intend to make a motion to transfer the Connecticut Bankruptcy actions to the Southern District of New York Bankruptcy Court: the motion to transfer venue is currently pending before the Bankruptcy Court in Connecticut.

North America, Westoil and ING have sought or are expected to seek to collect amounts allegedly owed to them arising from or related to the supply of bunkers to the Vessels.

<u>**POSSIBLE ARREST OF VESSEL AND NECESSITY OF INTERPLEADER**</u>

74.    Under United States maritime law, the contract supplier (such as O.W. Far East) of necessaries, including fuel, to a vessel obtains a maritime lien against that vessel. Additionally, under certain circumstances, a physical supplier (or transporter) of the fuel (such as O.W. USA, O.W. North America and Westoil) may also assert a maritime lien on that vessel.

75.    Moreover, other parties, such as ING, have asserted a right to payment for the Fuel Deliveries (*see* Exhibit 1).   Upon information and belief ING's claims are based on assignments of receivables by various O.W. entities including but not limited to O.W. Far East, O.W. USA and O.W. North America.

76.    As discussed above, the APL Vessels operate on a liner service with a routine schedule and ports of call.  The vessels regularly trade in the United States, as evidenced by the location of the fuel deliveries at San Pedro, California, and are due to call at various ports in the United States and will face arrest (*see* Exhibits 2 and 3) pursuant to Supplemental Admiralty Rule C by the defendants claiming to assert a maritime lien,[2] which would cause harm to Plaintiffs, delay the Vessels, affect innocent third parties with interests in the Vessels' cargo and generally inhibit and interfere with maritime commerce.

77.    APL presently has control over the funds invoiced for the Fuel Deliveries to the Vessels.  Plaintiffs disclaim any interest in the amount invoiced for the supply of bunkers to the Vessels.

---

[2] Plaintiffs make no assertion nor take a position as to the validity of any of the potentially asserted maritime lien  or other claims by any of the Defendants or whether O.W. Far East, O.W. USA, or O.W. North America has validly assigned any maritime lien or other claims to ING. These issues remain to be  decided.

78. APL cannot ascertain whether the amount owed for the Fuel Deliveries should be paid to O.W. Far East, O.W. USA, O.W. North America, Westoil or ING in order to extinguish all maritime liens and/or other claims against APL and the Vessels and to prevent the Vessels' arrest or attachment in this District or elsewhere and to prevent double liability for the Fuel Deliveries.

79. The competing claims of the Defendants or other third parties will likely expose APL and the Vessels to multiple liabilities in connection with the payment of the bunker invoices in order to extinguish competing maritime lien claims and/or other *in personam* or non-maritime claims.

80. APL, acting on behalf of the Vessels, is entitled to deposit with the Court the sum of at least $10,509,510.53, representing the amount due pursuant to the invoices issued by O.W. Far East for the Fuel Deliveries, and require that O.W. Far East, O.W USA, O.W. North America, Westoil, ING and any other claimant interplead among themselves to establish their respective rights to the funds.

81. Further, in order to comply with the requirements of Supplemental Admiralty Rule E(5)(a) and for the funds deposited into the registry to constitute security for the *in rem* claims of the claimants and to act as the substitute *res* against which claimants must assert their maritime liens for the Fuel Delivery, Plaintiffs are prepared to deposit an additional amount ($630,570.63) constituting 6% interest per annum or such other amount as the court deems just and proper. Thus, the total amount of the proposed deposit is calculated to be $11,140,081.60, inclusive of one year of interest.

82. After depositing the sum of $11,140,081.60 with the Court, APL is entitled to be discharged from further *in personam* liability with respect to the funds and liability for payment

for the Fuel Deliveries.  The Vessels are similarly entitled to be discharged from any maritime lien against it arising from the Fuel Deliveries as described herein and as reflected in Exhibits 4 - 29.

WHEREFORE, Plaintiffs APL Co. Pte Ltd and American President Lines, Ltd., individually and on behalf of the vessels APL Salalah, APL England, APL Oakland, APL Southampton, APL Thailand, APL China, APL Egypt, APL Philippines and APL Yangshan, respectfully requests that this Court:

(i)        determine which of the defendants is entitled to the Fuel Delivery funds, or, in the alternative, the share of each defendant, if any;

(ii)       enjoin O.W. Far East (Singapore) Pte. Ltd., O.W. USA Inc., O.W. North America Inc., Westoil Marine Services Inc., ING Bank, N.V. and any later-identified claimants from commencing any action against APL Co. Pte Ltd, American President Lines, Ltd. or the vessels APL Salalah, APL England, APL Oakland, APL Southampton, APL Thailand, APL China, APL Egypt, APL Philippines and APL Yangshan *in rem*, including but not limited to the arrest or attachment of the Vessels in any port, pursuant to Supplemental Admiralty Rules C or B based on the assertion of any *in rem* claim or *in personam* claim directed against APL for the provisions of the bunkers referred to herein as the Fuel Deliveries;

(iii)      discharge APL Co. Pte Ltd and American President Lines, Ltd. from any liability on any claim that has been made or may in the future for the Fuel Deliveries upon Plaintiffs' deposit of $11,140,081.16 into this Court's registry, or such other amount the Court finds sufficient to discharge APL and the Vessels from liability for the Fuel Deliveries;

(iv)    discharge the Vessels from any liability on any claim that has been made or may in the future be made for the Fuel Deliveries upon Plaintiffs' deposit of $11,140,081.16 into this Court's registry;

(vi)    award Plaintiffs their costs and attorneys' fees in this action; and

(vii)    award the return of any amount remaining in the registry (e.g., the interest deposit) to the Plaintiffs upon the ultimate disposition of claims to the deposited Fuel Delivery funds; and

(viii)    award Plaintiffs such other and further relief which this Court may deem just and proper.

Dated:  New York, New York
        January 28, 2015

                                        HOLLAND & KNIGHT LLP

                                        By:   _____

                                        James H. Hohenstein
                                        Marie E. Larsen
                                        31 West 52nd Street
                                        New York, New York 10019
                                        Telephone:  212-513-3200
                                        Telefax: 212-385-9010
                                        Email:  jim.hohenstein@hklaw.com
                                               marie.larsen@hklaw.com

                                        *Attorneys for Plaintiffs APL Co. Pte Ltd and American President Lines, Ltd. individually and on behalf of*
                                        *M/V APL SALALAH (IMO No. 9462029),*
                                        *M/V APL ENGLAND (IMO No. 9218650),*
                                        *M/V APL OAKLAND (IMO No. 9332250),*
                                        *M/V APL SOUTHHAMPTON (IMO No. 9462017),*
                                        *M/V APL THAILAND (IMO No. 9077123),*
                                        *M/V APL CHINA (IMO No. 9074389),*
                                        *M/V APL EGYPT (IMO No. 9196905),*
                                        *M/V APL PHILIPPINES (IMO No. 9077276), and,*
                                        *M/V APL YANGSHAN (IMO No. 9462031)*

# **EXHIBIT 1**



## NOTICE OF APPOINTMENT OF RECEIVERS AND ASSIGNMENT

To: APL Co. Pte. Ltd.
9 North Buona Vista Drive #14-01
The Metropolis Tower 1
SG- 138588 Singapore
SINGAPORE

13 November 2014

Dear Sirs,

**English Omnibus Security Agreement dated 19 December 2013 between O.W. Bunker Trading A/S and certain of its subsidiaries (as Chargors) and ING Bank N.V. as Security Agent (the Security Agreement)**

### Appointment of Receivers

1.      Please be informed that Paul David Copley, Ian David Green and Anthony Victor Lomas, each of PricewaterhouseCoopers LLP, 7 More London Riverside, London, SE1 2RT United Kingdom (the Receivers) were appointed as joint receivers of the Security Assets (as defined in the Security Agreement) on 12 November 2014.

### Assignment

2.      We refer to any notice(s) invoices or confirmations received by you pursuant to the Security Agreement (the Notices) under which you have been given notice that the relevant chargor or chargors as the case may be (the Chargor), has assigned by way of security to ING Bank N.V. (the Security Agent) all its rights in respect of all supply contracts with you as may be constituted or supplemented by the OWB general terms and conditions as provided to you and as amended, restated or supplemented from time to time (the Contracts), including without limitation the following unpaid invoices under the supply contracts:

| Document No | Currency | Invoice Amount | Invoice Date | Due Date | Sales Order No |
|---|---|---|---|---|---|
| 199-141246 | USD | 922.210,00 | 07-okt-14 | 05-nov-14 | 199-12248 |
| 199-141211 | USD | 396.612,50 | 08-okt-14 | 06-nov-14 | 199-12247 |
| 197-1410057 | USD | 241.691,88 | 02-okt-14 | 31-okt-14 | 197-19105 |
| 197-1410056 | USD | 1.015.137,20 | 14-okt-14 | 12-nov-14 | 197-19142 |
| 199-141201 | USD | 245.850,00 | 01-okt-14 | 30-okt-14 | 199-12224 |
| 197-1410017 | USD | 513.000,00 | 07-okt-14 | 05-nov-14 | 197-19112 |
| 199-141203 | USD | 194.900,00 | 02-okt-14 | 31-okt-14 | 199-12215 |
| 197-1410066 | USD | 1.014.947,63 | 15-okt-14 | 13-nov-14 | 197-19140 |
| 197-1410034 | USD | 37.680,00 | 13-okt-14 | 11-nov-14 | 197-19154 |
| 197-1410046 | USD | 1.018.463,36 | 07-okt-14 | 05-nov-14 | 197-19098 |
| 197-1410018 | USD | 484.075,00 | 11-okt-14 | 09-nov-14 | 197-19125 |
| 199-141170 | USD | 1.061.260,00 | 30-sep-14 | 29-okt-14 | 199-12223 |

| | | | | | |
|---|---|---|---|---|---|
| 199-141202 | USD | 53.600,00 | 02-okt-14 | 31-okt-14 | 199-12233 |
| 197-1410027 | USD | 1.102.035,00 | 02-okt-14 | 31-okt-14 | 197-19087 |
| 197-1410058 | USD | 2.397.383,70 | 08-okt-14 | 06-nov-14 | 197-19104 |
| 197-1410078 | USD | 1.231.555,22 | 13-okt-14 | 11-nov-14 | 197-19099 |
| 197-1410056A | USD | 63.886,00 | 14-okt-14 | 12-nov-14 | 197-19142 |
| 197-1410065 | USD | 1.607.276,45 | 15-okt-14 | 13-nov-14 | 197-19141 |
| 197-1410049 | USD | 76.875,00 | 17-okt-14 | 15-nov-14 | 197-19173 |
| 197-1407052 | USD | 150,00 | 17-jul-14 | 15-aug-14 | 197-18837 |
| 197-1410020 | USD | 16.910,00 | 01-okt-14 | 30-okt-14 | 197-19065 |
| 187-1408004A | USD | 31.176,79 | 06-aug-14 | 04-sep-14 | 187-10619 |
| 199-141200 | USD | 1.048.200,00 | 01-okt-14 | 30-okt-14 | 199-12222 |
| **Total selection** | **USD** | **14.774.875,73** | | | |

3.      This letter also constitutes notice to you that under the Security Agreement the relevant Chargor has assigned by way of security to the Security Agent all its rights in respect of the Contracts.

4.      You must pay all amounts payable under any invoice issued in respect of the Contracts to the account with ING Bank N.V. specified in that invoice.

5.      Any amendment to these payment instructions may not be made without the express written consent of the Security Agent. Any payment by you to an account with ING Bank N.V. specified in an invoice will extinguish the corresponding payment obligation to the relevant Chargor in respect of that particular invoice under the relevant Contract.

**6.      Please note that any payment by you which is not made in full compliance with the payment instructions in this notice will NOT extinguish the relevant payment obligation to the relevant Chargor in respect of invoices under the relevant Contract and you will remain fully liable for all amounts outstanding.**

*Miscellaneous*

7.      The relevant Chargor:

   (a)      remains liable under the Contracts to perform all obligations assumed by it under the Contracts; and

   (b)      none of the Security Agent, its agents, the Receivers or any other person will at any time be under any obligation or liability to you under or in respect of the Contracts.

8.      Notwithstanding that the accounts specified in an invoice are held in the name of a Chargor (as an administrative matter), the underlying receivables are being collected by the Security Agent and any payment to any such account therefore constitutes a payment to the Security Agent and does not constitute a payment to that Chargor.

9.      All rights, powers and discretions of the relevant Chargor under the Contracts are now exercisable by, and notices must be given to, ING Bank N.V. or as it directs.

10.      This letter and any non-contractual obligations arising out of or in connection with it are governed by English law.

Please acknowledge receipt of this letter as a matter of urgency by signing the acknowledgement and sending a copy of the signed letter back to the Security Agent at ING Bank N.V., Bijlmerplein 888, 1102 MG Amsterdam, The Netherlands (Loc.code: AMP N 04 046) Attention: Agency Desk – Ops  IT Banking Wholesale Lending Operations Agency.

If you have any questions in relation to this letter please contact Alina Klarner at PricewaterhouseCoopers LLP on +447922226044 or alina.klarner@uk.pwc.com.

Yours faithfully,

**SIGNED by Paul David Copley for and on behalf of the Chargor as the Chargor's agent and without personal liability pursuant to powers granted in the Security Agreement including the power contained in Clause 17 (Power of Attorney) of the Security Agreement.**

......................................
**Signed by ING Bank N.V. (in its capacity as Security Agent) for and on behalf of the Chargor pursuant to the powers granted in the Security Agreement including the power contained in Clause 17 (Power of Attorney) of the Security Agreement.**

We hereby acknowledge the terms set out above:

......................................
APL Co. Pte. Ltd.

# EXHIBIT 2



WESTOIL MARINE SERVICES, INC.
A HARLEY MARINE SERVICES, INC. COMPANY
Berth LA301, 1610 Barracuda Street, Terminal Island, California 90731
Telephone (310) 549-1700   Fax (310) 549-2100
www.harleymarine.com

Date: 01/07/2015

To:  M/V APL China and her owners,

As you are aware, our tank barge Hannah 2801 delivered fuel oil to your vessel APL China on 10/22/2014.  On that date, our tank barge presented itself alongside your vessel, your Chief Engineer inspected both the tank barge and the fuel oil proposed to be delivered, then accepted both and requested that delivery of the fuel oil commence.  That delivery of fuel oil was accepted and completed.  Your Chief Engineer executed our bill of lading as well as the relevant cargo delivery receipt, confirming that delivery had been accepted and completed.

We have not been paid for the charges associated with the delivery of the fuel oil to your vessel.  Consequently we are looking to you for payment and ask that you contact us promptly to arrange for that payment.

Under U.S. maritime law (46 USC 31341 et seq.), we, as the owner and operator of the tank barge that delivered the fuel oil to your vessel, have a statutory maritime lien upon your vessel for necessaries, the transportation services and charges required to deliver that fuel oil.  In addition, however, by virtue of your Chief Engineer executing our bill of lading, you are separately liable as well on an *in personam* basis for those charges (you agreed to be "jointly and severally liable to the carrier for the payment of all charges").

While we have a right to arrest your vessel to secure payment of the relevant charges, we would prefer not to do so but would rather prefer to work with you promptly and amicably to resolve the matter.  However, if payment is not received or if we have not otherwise made arrangements with you for resolution of the matter within fifteen (15) days of the date of this letter, we will have no choice but to pursue our legal rights.

We have been a leader in the bunker transportation industry for quality of service, safety and environmental attentiveness, and would like to continue to provide services to yourselves and others into the future.  Your prompt attention to this matter would be appreciated.

We are attaching our invoice for charges associated with the delivery of fuel oil to your vessel, along with a copy of both the bill of lading and delivery receipt signed by your Chief Engineer.

Bobby Franco
In-House Counsel
Harley Marine Services, Inc.

    



**WESTOIL**

A HARLEY MARINE SERVICES COMPANY

Company Address
910 SW Spokane St.
Seattle, WA 98134
Phone: (206) 628-0051
FAX: (206) 628-0293

Remittance Address
P.O. Box 24062
Seattle, WA 98124

# INVOICE No 48847

| | |
|---|---|
| JOB NO.: | WMS-32042 |
| INVOICE DATE: | 11/2/2014 |
| CUSTOMER P.O. #: | 209-10296 |

**In Account With:**
OW Bunker North America, Inc
281 Tresser Boulevard
Stamford, CT 06901
Att: Adrian Tolson

| | |
|---|---|
| DELIVERED TO M/V: | APL China |
| EX: | LA187.5 |
| TO: | LA304 |
| DELIVERY DATE: | 10/22/2014 |
| TERMS: | **DUE UPON RECEIPT** |

| Description | Actual Qty. | Billed Qty. | Unit Price | Amount |
|---|---|---|---|---|
| **WMS-32042** | | | | |
| HSRMK 380 APL China | 9,846.05 | 9,846.05 | $1.35 | $13,292.17 |
| | Fuel Surcharge. | 9,846.05 | $0.10 | $955.07 |
| | Sub Total: | | | **$14,247.24** |
| **Totals:** | **9,846.05** | **9,846.05** | | **US $14,247.24** |

**Comments:**
THANK YOU! YOUR BUSINESS IS APPRECIATED! A finance charge of 1.5% per month, which is an annual percentage rate of 18%, will be charged on all past due accounts in excess of 30 days.

### ACH INSTRUCTIONS

| Name: | Routing Number: | Account Number: | Swift Code: |
|---|---|---|---|
| U.S. Bank | 125000105 | 153595020287 | USBKUS44IMT |

## WESTOIL MARINE SERVICES, INC.
### A HARLEY MARINE SERVICES, INC COMPANY
Berth LA301, 1610 Barracuda Street, Terminal Island, California 90731
Telephone (310) 549-1700    Fax (310) 549-2100
www.harleymarine.com

**Date: 01/07/2015**

**To:  M/V APL Yangshan and her owners,**

As you are aware, our tank barge David Fanning delivered fuel oil to your vessel APL Yangshan on 11/03/2014.  On that date, our tank barge presented itself alongside your vessel, your Chief Engineer inspected both the tank barge and the fuel oil proposed to be delivered, then accepted both and requested that delivery of the fuel oil commence.  That delivery of fuel oil was accepted and completed. Your Chief Engineer executed our bill of lading as well as the relevant cargo delivery receipt, confirming that delivery had been accepted and completed.

We have not been paid for the charges associated with the delivery of the fuel oil to your vessel.  Consequently we are looking to you for payment and ask that you contact us promptly to arrange for that payment.

Under U.S. maritime law (46 USC 31341 et seq.), we, as the owner and operator of the tank barge that delivered the fuel oil to your vessel, have a statutory maritime lien upon your vessel for necessaries, the transportation services and charges required to deliver that fuel oil.  In addition, however, by virtue of your Chief Engineer executing our bill of lading, you are separately liable as well on an *in personam* basis for those charges (you agreed to be "jointly and severally liable to the carrier for the payment of all charges").

While we have a right to arrest your vessel to secure payment of the relevant charges, we would prefer not to do so but would rather prefer to work with you promptly and amicably to resolve the matter.  However, if payment is not received or if we have not otherwise made arrangements with you for resolution of the matter within fifteen (15) days of the date of this letter, we will have no choice but to pursue our legal rights.

We have been a leader in the bunker transportation industry for quality of service, safety and environmental attentiveness, and would like to continue to provide services to yourselves and others into the future.  Your prompt attention to this matter would be appreciated.

We are attaching our invoice for charges associated with the delivery of fuel oil to your vessel, along with a copy of both the bill of lading and delivery receipt signed by your Chief Engineer.

**Bobby Franco**
**In-House Counsel**
**Harley Marine Services, Inc.**

    



**Company Address**
910 SW Spokane St.
Seattle, WA 98134
Phone: (206) 628-0051
FAX: (206) 628-0293

**Remittance Address**
P.O. Box 24062
Seattle, WA 98124

# INVOICE  No 48893

JOB NO.:          WMS-32089
INVOICE DATE.     11/6/2014
CUSTOMER P.O. #:  209-10314

## In Account With:
OW Bunker North America, Inc
281 Tresser Boulevard
Stamford, CT 06901
Att: Adrian Tolson

DELIVERED TO M/V: APL Yangshan
EX:               LA187.5
TO:               LA302
DELIVERY DATE:    11/3/2014
TERMS:            **DUE UPON RECEIPT**

| Description | Actual Qty. | Billed Qty. | Unit Price | Amount |
|---|---|---|---|---|
| **WMS-32089** | | | | |
| LSDMA APL Yangshan | 1,339.73 | 3,000.00 (next min discount) | $1.00 | $3,000.00 |
| | | **Sub Total:** | | **$3,000.00** |
| **Totals:** | **1,339.73** | **3,000.00** | | **US $3,000.00** |

**Comments:**
THANK YOU! YOUR BUSINESS IS APPRECIATED! A finance charge of 1.5% per month, which is an annual
percentage rate of 18%, will be charged on all past due accounts in excess of 30 days.

### ACH INSTRUCTIONS

| Name: | Routing Number: | Account Number: | Swift Code: |
|---|---|---|---|
| U.S. Bank | 125000105 | 153595020267 | USBKUS44IMT |

**EXHIBIT 3**



**MONTGOMERY McCRACKEN**

ATTORNEYS AT LAW

**Vincent M. DeOrchis**
Admitted in New York

437 Madison Avenue
29th Floor
New York, NY 10022
Tel: 212-867-9500

Direct Dial:     212-551-7730
Fax:             212-201-1931
Email:     vdeorchis@mmwr.com

January 26, 2015

<u>Via Email</u>

APL Co. Pte. Ltd.
As Owners, Managers, Charterers,
and/or Agents of the Vessels Identified Below
c/o Holland & Knight
31 West 52nd Street
New York, NY 10019

Attn.:     James Hohenstein
           jim.hohenstein@hklaw.com

Re:     O.W. Bunker USA Inc. and O.W. Bunker North America Inc.

Dear Jim,

        We understand that your firm represents APL in litigation commenced in New York;
please forward this letter to APL.

        As you know, we represent O.W. Bunker USA Inc. and O.W. Bunker North America Inc.
(collectively "Debtors") in connection with their chapter 11 cases filed before the United States
Bankruptcy Court for the District of Connecticut. We have been instructed to enforce the
Debtors' maritime lien rights in connection with the supply of bunkers.

        Prepetition, the Debtors regularly supplied bunkers to APL vessels as those vessels
operated on trans-pacific liner services between Asia and North America. We have identified ten
(10) parcels of bunkers that were supplied to APL vessels and for which the Debtors remain
unpaid as of the date of this letter and, due to the insolvency of O.W. Bunker Far East (S) Pte.
Ltd., Debtors do not expect to be paid in full by O.W. Bunker Far East (S) Pte. Ltd. for the
supply of these bunkers. As such, we are actively tracking these vessels with the intent of
commencing arrest proceedings to enforce Debtors' maritime lien rights. Specifically, we have
been tracking the following vessels:

Montgomery McCracken Walker & Rhoads LLP

January 26, 2015
Page 2

APL YANGSHAN – Estimated Time of Arrival (ETA) Los Angeles, CA on February 18th
APL CHINA – Presently in Los Angeles, CA
APL EGYPT – ETA Los Angeles, CA on January 28th
APL THAILAND – ETA Oakland, CA on January 27th
APL KOREA – ETA Los Angeles, CA on February 26th
APL OAKLAND – Presently in Dutch Harbor, AK
APL ENGLAND – ETA Oakland, CA on February 1st
APL PHILIPPINES – ETA Los Angeles, CA on February 26th
APL SOUTHAMPTON – ETA San Pedro, CA on February 6th
APL SALALAH – Presently in Los Angeles, CA

Please forward this letter to APL as notice of Debtors' intent to arrest the above identified vessels in order to enforce Debtors' maritime lien rights in connection with the supply of bunkers. This letter is not to be construed as an effort to collect a debt from APL, or any person, and is only concerned with satisfaction of maritime liens by Debtors, as suppliers and vendors of necessaries, against the referenced vessels. The Debtors further reserve all of their rights with regard to other liens or claims they may have against any APL vessel or entity.

Regards,

/s/ Vincent M. DeOrchis

Vincent M. DeOrchis
Robert E. O'Connor

# EXHIBIT 4

# O W BUNKER FAR EAST (S) PTE LTD EAST

# W Bunker

## Sales Order Confirmation

**Sales Order No**        197 19104

We are hereby pleased to acknowledge receipt of your order as follows

| | |
|---|---|
| **Vessel** | APL SALALAH (IMO 9462029) |
| **Port** | SAN PEDRO(CA USA) |
| **Delivery date** | 6 October 2014 |
| **Seller** | O W BUNKER FAR EAST (S) PTE LTD |
| **Your ref** | |
| **Account** | MASTER AND/OR OWNER AND/OR CHARTERERS AND/OR MV APL SALALAH AND/OR APL CO P E LTD |

| Quantity | Unit | Product / Quality | Curr | Price Unit | Supplier |
|---|---|---|---|---|---|
| | | | USD | | A |

| | |
|---|---|
| **Agent** | |
| **Payment** | |
| **Remarks** | |

USD 450 delivery & anchorage
CA tax at rate
Operational Contact
Jennifer
Mobile 28 019 030

We thank you for this nomination

Kind Regards

Long Sze Chan

| | |
|---|---|
| **Direct** | 65   UCE |
| **Mobile** | |
| **Yahoo ID** | |
| **E Mail** | |
| **Office E Mail** | |

Phone 6383 7000 0
Fax   65 6039 81270
Telex 05 920 664
Cables OWBUNKER
E Mail wws ngapore@owbunker com sg
Internet http www owbunker com
Co Reg No 199201808K
GST Reg No M2 0 06089 3
ING Bank N V
IBAN NL95 INGB 0020 1182 44
IBAN NL58 INGB 065 3629 97
SWIFT NGBN 2A
USD acc no 2100 5005 952958

SINGAPORE 25 September 2014

# EXHIBIT 5

# O.W. Bunker North America Inc.

Two Stamford Plaza, 15th Floor
281 Tresser Boulevard
Stamford, CT 06901



## Bunker delivery receipt

| | | |
|---|---|---|
| Delivery date: | Alongside: | |
| Receiving vessel: | Hose connected: | |
| IMO number: | Commenced pumping: | |
| Flag: | Completed pumping: | |
| Port/location: | Hose disconnected: | |
| Bound for: | Departure: | |
| Delivered by: | | |

| Description Product delivered | Litres Net @ 15°C | BBLS Net | Metric tons in air (3 decimal) | BBLS Gross |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| | HS RMG380 | LSRMG380 | Marine Gas Oil | Marine Gas Oil |
|---|---|---|---|---|
| Kinematic viscosity @ 50°C | | | | |
| Density in kg/m³ @ 15°C per ISO 3675 | | | | |
| Water content, % | | | | |
| Sulphur content m³ per ISO 8754 | | | | |
| Flash point, F | | | | |
| Pour point, F | | | | |
| API Gravity @ F | | | | |
| Ash content | | | | |
| Delivered temperature °C | | | | |

## Sample seal numbers

| | | |
|---|---|---|
| Receiving vessel: | | |
| | | |
| Barge: | | |

| Remarks | | |
|---|---|---|

Received the above in good condition.
Also receive 3 true representative ship samples each grade collected from ship manifold whilst bunkering.
Page 1: Administration, Page 2: Barge, Page 3:Receiving vessel, Page 4: Receiving vessel.
Fuel oil supplied is in conformity with Marpol regulation 14(1) and 18(1). According to regulation 4(1a) the sulphur content of fuel oil used on board ships in a SOx emission control area must not exceed 1.5 % m/m.

| | | |
|---|---|---|
| Suppliers stamp and signature | Vessels stamp | Signature chief engineer/Master |

# EXHIBIT 6

OW bunker

M/V  APL SAL ALAH
AND/OR OWNERS/CHARTERERS

APL Co Pte Ltd
9 North Buona Vista Drive
14-01 The Metropolis Tower 1
Singapore SG-138588
Singapore

16365

TAX INVOICE

DATE OF INVOICE  :  08 October 2014

INVOICE NO        :  197 1410058

ORDER NO          :  19 1910.

DATE OF SUPPLY   :  08 October 2014

PORT  SAN PEDRO (VESM)                    DUE DATE   :  06 November 2014
YOUR REFERENCE

| Quantity supplied | Order description | Price per | Invoice amount |
|---|---|---|---|
| 1364 160 MT | Fueloil 00 CST 3 5% | 552 00 MT | 45 389 0 |

EXCHANGE RATE USD 1  SGD 1 2722

Add Fee 0 000  USD
Total

EXCHANGE RATE USD 1 SGD 1 2722
USD

TERMS OF PAYMENT

BANK        DBS BANK                                OW BUNKER FAR EAST (S) PTE LTD EAST

ACCOUNT    IBAN STD SGD 105 15324        USD med account
            IBAN USD SGD 105 26204        EUR

SWIFT DGBSSG

# EXHIBIT 7

O W. BUNKER FAR EAST (S) PTE LTD  EAST

# W. Bunker

APL Co Pte Ltd
9 North Buona Vista Drive
# 4 01 The Metropolis Tower 1
SG 138588 Singapore
Republic of Singapore
M APL Bunker

300 Beach Road #32 01/03
The Concourse
Singapore 199555
Singapore
Phone +65 631 70 000
Fax    +65 639 81 270
Telex  051 9407 6641
Cables  OWBUNKER
E-Mail  wwsingapore@owbunker com sg
Internet  http //www owbunker com
Co Reg No  199201808K
GST Reg No  M2-0106089-3
ING Bank N V
IBAN  NL95 INGB 0020 1182 44
IBAN  NL58 INGB 0651 3629 97
SWIFT  INGBNL2A
USD acc no  2100 5005 952958

## Sales Order Confirmation

| | |
|---|---|
| Sales Order No | **197-19099** |

We are hereby pleased to acknowledge receipt of your order as follows

| | |
|---|---|
| Vessel | APL ENGLAND (IMO  9218650) |
| Port | SAN PEDRO(CA USA) |
| Delivery date | 6 October 2014 |
| Seller | O W  BUNKER FAR EAST (S) PTE LTD |
| Your ref | |
| Account | MASTER AND/OR OWNER AND/OR CHARTERERS AND/OR MV APL ENGLAND AND/OR APL CO  PTE  LTD |

SINGAPORE  25  September 2014

| Quantity | Unit | Product / Quality | Curr | Price | Unit | Supplier |
|---|---|---|---|---|---|---|
| 2 200 00 | MT | Fueloil 700 CST 3 5 % | USD | 557 00 | MT | O W  Bunker USA  Inc |

| | |
|---|---|
| Agent | |
| Payment | WITHIN 30 DAYS FROM DATE OF SUPPLY UPON PRESENTATION OF INVOICE (ORIGINAL/TELEX/FAX)  COPY OF DELIVERY RECEIPT WILL BE FORWARDED WHEN WE HAVE RECEIVED SAME |
| Remarks | AS PER ISO 8217 2005 (E) |
| | USD 450  f delivery at anchorage |
| | C A  Tax f applicable |
| | Operational Contact |
| | Diana Ferem |
| | Mobile  +1 281 910 0351 |

We thank you for this nomination

Kind Regards

Leng Sze Chan

| | |
|---|---|
| Direct | +65 6317 0057 |
| Mobile | +65 9669 4663 |
| Yahoo ID | lscn_owbunker |
| E Mail | lscn@owbunker com sg |
| Office E Mail | owbsineast@owbunker com sg |

# **EXHIBIT 8**

# O.W. Bunker North America Inc.

Two Stamford Plaza, 15th Floor
281 Tresser Boulevard
Stamford, CT, 05901



## Bunker delivery receipt

| | | | |
|---|---|---|---|
| Delivery date: | 10/13/2014 | Alongside: | 1145 |
| Receiving vessel: | APL ENGLAND | Hose connected. | 1230 |
| IMO number: | 9218650 | Commenced pumping: | 1250 |
| Flag: | SINGAPORE | Completed pumping: | 1645 |
| Port/location: | LA 214 | Hose disconnected. | |
| Bound for: | | Departure: | |
| Delivered by: | ANNE ELIZABETH | | |

| Description Product delivered | Litres Net @ 15℃ | BBLS Net | Metric tons in air (3 decimal) | BBLS Gross |
|---|---|---|---|---|
| HSRMK 700 | | 13814.79 | 2207.46 | 13996.15 |
| | | | | |
| | | | | |
| | | | | |

| | HS RMG380 | LSRMG380 | Marine Gas Oil | Marine Gas Oil |
|---|---|---|---|---|
| Kinematic viscosity @ 50℃ | 295 | | | |
| Density in kg/m³ @ 15℃ per ISO 3675 | | | | |
| Water content, % | | | | |
| Sulphur content in % per ISO 8754 | 3.42 | | | |
| Flash point, ℉ | 200° | | | |
| Pour point, ℉ | | | | |
| API Gravity @ ℉ | 9.0 | | | |
| Ash content | | | | |
| Delivered temperature, ℃ | 95° | | | |

**Sample seal numbers**

| | | | |
|---|---|---|---|
| Receiving vessel: | MARPOL - 36823845 | | |
| | SHIP - 36825930 | | |
| Barge | 36825456 | | |

Remarks.

Received the above in good condition
Also received three representative drip samples each grade collected from ship manifold whilst bunkering
Page 1: Administration. Page 2: Barge. Page 3:Receiving vessel. Page 4: Receiving vessel.
"Fuel oil supplied is in conformity with Marpol regulation 14(1) and 18(1). According to regulation 4(a), the sulphur content of fuel oil used on board ships in a SOx emission control area must not exceed 1,0 % m/m"

M.V. APL ENGLAND
SINGAPORE
CALL SIGN : 9VBD2
OFFICIAL NO : 389183
GRT : 65792
NRT : 35694
BHP : 55659 KW
IMO NO. : 9218650

Anna Elizabeth
#1228472
Wesco Marine

Suppliers stamp and signature          Vessels stamp          Signature chief engineer/Master
                                                                  L.M.F. VAZ



**EXHIBIT 9**

# W Bunker

M/V APL ENGLAND
AND/OR OWNERS/CHARTERERS

APL Co Pte Ltd
9 North Buona Vista Drive
14-01 The Metropolis Tower 1
Singapore SG- 138588
Singapore

PORT: SAN PEDRO(CA USA)
YOUR REFERENCE

**TAX INVOICE**

| | |
|---|---|
| DATE OF INVOICE | 13 October 2014 |
| INVOICE NO | 197-1410078 |
| ORDER NO | 9-16000 |
| DATE OF SUPPLY | 13 October 2014 |
| DUE DATE | : 11 November 2014 |

| Quantity supplied | Quality description | Price per | Invoice amount |
|---|---|---|---|
| 2,207.460 MT | Fueloil 700 CST S | 557.00 MT | 1,229,558.2 |
| 1,000 LPS | Overtime | 2,000.00 LPS | 000.00 |
| | (4 October 13 (Columbus Day) Holiday charge on barge movements | | |
| | $280/hour min 5 hour ) | | |
| | EXCHANGE RATE  USD 1= SGD 1.2 22 | | |

Add Tax at .000   USD
of 1                 USD

EXCHANGE RATE  USD 1= USD 1.000
USD
Th y t   FH      e

TERMS OF PAYMENT  3n t   An the 1 certif that DNE parc wk
f   r t   t wc   UD    ap c   1   h  d  t  rc al   ri  h

| BANK | ING Bank N.V | O W BUNKER FAR EAST (S) PTE LTD EAST |
|---|---|---|
| ACCOUNT | IBAN NL95 INGB 002 1 18 1 | USD and Both cur ne |
| | IBAN NL55 INGB 002 1 5 9 | EUR |
| | SWIFT INGBNL2A | |

# EXHIBIT 10

# O.W. BUNKER FAR EAST (S) PTE LTD. EAST

**W Bunker**

APL Co  Pte  Ltd
9 North Buona Vista Drive
#14-01 The Metropolis Tower 1
SG  138588 Singapore
Republic of Singapore
M  APL Bunker

300 Beach  Road #32 01 03
The Concourse
Singapore 199555
Singapore
Phone  +65 631 70 000
Fax    +65 639 81 270
Telex  051-9407 6641
Cables  OWBUNKER
E-Mail  wwsingapore@owbunker com sg
Internet  http //www owbunker com
Co Reg  No 199201808K
GST Reg  No  M2-0106089-3
ING Bank N V
IBAN  NL95 INGB 0020 1182 44
IBAN  NL58 INGB 0851 3629 97
SWIFT  INGBNL2A
USD acc no  2100 5005 952958

## Sales Order Confirmation

| | |
|---|---|
| Sales Order No. | **197-19142** |

We are hereby pleased to acknowledge receipt of your order as follows

| | |
|---|---|
| Vessel | APL OAKLAND (IMO  9332250) |
| Port | SAN PEDRO(CA USA) |
| Delivery date | 13  October 2014 |
| Seller | O W BUNKER FAR EAST (S) PTE LTD |
| Your ref | |
| Account | MASTER AND/OR OWNER AND/OR CHARTERERS<br>AND/OR MV APL OAKLAND<br>AND/OR APL CO  PTE  LTD |

SINGAPORE  3  October 2014

| Quantity | Unit | Product / Quality | Curr | Price | Unit | Supplier |
|---|---|---|---|---|---|---|
| 1 900 00 | MT | Fuel i 500 CST 3 5 % | USD | 534 00 | MT | O W  Bunker USA  Inc |
| 75 00 | MT | Gasoil 0 1% | USD | 850 00 | MT | O W  Bunker USA  Inc |

| | |
|---|---|
| Agent | |
| Payment | WITHIN 30 DAYS FROM DATE OF SUPPLY UPON PRESENTATION OF INVOICE<br>(ORIGINAL/TELEX/FAX)  COPY OF DELIVERY RECEIPT WILL BE FORWARDED WHEN WE HAVE<br>RECEIVED SAME |
| Remarks | AS PER ISO 8217 2005 (E)<br><br>USD 450 if delivery at anchorage<br>C A  Tax if applicable<br>If delivers October 13 (Columbus Day) then holiday charges will apply - $250/hou  min  8  ours<br>Operational Contact<br>Diana Eikrem<br>Mobile  +1 281 910 035 |

We thank you for this nomination

Kind Regards

Leng Sze Chan

| | |
|---|---|
| Direct | +65 6317 0057 |
| Mobile | +65 9669 4663 |
| Yahoo ID | lscn_owbunker |
| E-Mail | lscn@owbunker com sg |
| Office E Mail | owbs neast@owbunker com sg |

# EXHIBIT 11

# O.W. Bunker North America Inc.

Two Stamford Plaza, 15th Floor
281 Tresser Boulevard
Stamford, CT, 06901



## Bunker delivery receipt

| | | | | |
|---|---|---|---|---|
| Delivery date | 10.14.2014 | Alongside | | 0900 |
| Receiving vessel | APL OAKLAND | Hoses connected | | 2280 |
| IMO number | 9332250 | Commenced pumping | | 0920 |
| Flag | GIBRALTAR | Completed pumping | | 1705 |
| Port of name | CB 96 | Hose disconnected | | |
| Bunker port | OAKLAND | Departure | | |
| Delivered by | D. EDWARDS | | | |

| Description Product delivered | Litres Net @ 15 C | BBLS Net | Metric tons in air (3 decimal) | BBLS Gross |
|---|---|---|---|---|
| USLMA | | 54076 | 75.160 | 54089 |
| 3M62Mk | | 1862175 | 1901.006 | 1125764 |

| | HSBMK380 | JSMO380 | Marine gas oil | Marine Gas Oil |
|---|---|---|---|---|
| Density in vacuum @ 15 C | 335 | | 297 | |
| Kinematic viscosity @ 1250 per ISO 3675 | 1009.4 | | 7.579 | |
| Water content % | NA | | NA | |
| Sulphur content m/m per ISO 8754 | 3.38 | | .05 | |
| Flash point C | 200 | | 156 | |
| Pour point C | NA | | -0.4 | |
| Ash content m/m | 8.6 | | 30.0 | |
| Aluminium m/m | NA | | N | |
| Delivered temperature F | 103 | | 81 | |

## Sample seal numbers

| | | |
|---|---|---|
| Receiving vessel | 36823934 | 36823671 |
| Barge | 36825540 | 36823540 |
| Remarks | MARPOL SEAL # 36823367 | 36823786 |

Received the above in good condition

Also received three representative drip samples each grade collected from the manifold whilst bunkering

Page 1: Administration  Page 2: Barge  Page 3: Receiving vessel  Page 4: Receiving vessel

The sulphur content is in conformity with Marpol regulation 14 1 and 18 1. According to regulation 4, the sulphur content of fuel to be used on board ships in a SOx emission control area may not exceed 1.0 % m/m

Deliverer's stamp and signature        Vessel's stamp        Signature and rank of her Master

IDIA

# **EXHIBIT 12**



M/V  APL OAKLAND
AND/OR OWNERS/CHARTERERS

APL Co. Pte. Ltd.                      *16408*
9 North Buona Vista Drive
#14-01 The Metropolis Tower 1
Singapore, SG- 138588
Singapore

PORT:  SAN PEDRO(CA USA)
YOUR REFERENCE:

**TAX INVOICE**

DATE OF INVOICE  :  ~~14. October 2014~~

INVOICE NO       :  197-1410056

ORDER NO.        :  197-19142

DATE OF SUPPLY   :  14. October 2014

DUE DATE         :  12. November 2014

| Quantity supplied | Quality/description | Price/per | Invoice amount |
|---|---|---|---|
| 1,901.006  MT | Fueloil 500 CST 3,5% | 534.00  MT | 1,015,137.20 |

EXCHANGE RATE: USD 1 = SGD 1.2750

*2011*
*7280058310*

| | Add Tax @0.000% | USD | 0.00 |
|---|---|---|---|
| | Total | USD | 1,015,137 20 |

EXCHANGE RATE : USD 1 = USD 1.0000
USD:
The prices are excl. all taxes and/or other fees

TERMS OF PAYMENT 30 days from date of supply With value date not later than DUE DATE or previous working day
when it is a holiday In case of delays in payment interest will be charged in accordance with our valid General Terms and Conditions

BANK:       ING Bank N V.                                    O.W. BUNKER FAR EAST (S) PTE. LTD. EAST

ACCOUNT:    IBAN: NL95 INGB 0020 1182 44          USD and all other currencies
            IBAN: NL58 INGB 0651 3629 97          EUR

            SWIFT: INGBNL2A

300 Beach Road
#32-01/03, The Concourse
SINGAPORE 199555

Phone +65 631 70 000
Fax   +65 639 81 270

Telex  051-9407 6641
Cables  OWBUNKER
E-Mail  wwsingapore@owbunker.com.sg
Internet. http://www.owbunker.com

Per telegraphic transfer directly to our account without deduction
of bank charges which are for buyers account

Co Reg No 199201808K
GST Reg No M2 0106089-3



M/V  APL OAKLAND
AND/OR OWNERS/CHARTERERS

APL Co. Pte. Ltd.
9 North Buona Vista Drive
#14-01 The Metropolis Tower 1
Singapore, SG- 138588
Singapore

*1640⁹*

**TAX INVOICE**

DATE OF INVOICE   : ~~14. October 2014~~

INVOICE NO        : 197-1410056A

ORDER NO.         : 197-19142

DATE OF SUPPLY    : 14. October 2014

DUE DATE          : 12. November 2014

PORT: SAN PEDRO(CA USA)
YOUR REFERENCE:

| Quantity supplied | Quality/description | Price/per | Invoice amount |
|---|---|---|---|
| 75.160  MT | Gasoil 0,1% | 850.00  MT | 63,886.00 |

EXCHANGE RATE: USD 1 = SGD 1.2750

*201'1*
*7280058319*

|  |  |  |  |
|---|---|---|---|
| Add Tax @0.000%  USD |  |  | 0.00 |
| Total | USD |  | 63,886.00 |

EXCHANGE RATE : USD 1 = USD 1.0000
USD.
The prices are excl. all taxes and/or other fees

**TERMS OF PAYMENT** 30 days from date of supply. With value date not later than DUE DATE or previous working day
when it is a holiday. In case of delays in payment interest will be charged in accordance with our valid General Terms and Conditions

BANK:      ING Bank N.V

ACCOUNT:   IBAN  NL95 INGB 0020 1182 44
           IBAN: NL58 INGB 0651 3629 97

           SWIFT: INGBNL2A

USD and all other currencies
EUR

**O.W BUNKER FAR EAST (S) PTE. LTD. EAST**
300 Beach Road
#32-01/03  The Concourse
SINGAPORE 199555

Phone  +65 631 70 000
Fax    +65 639 81 270

Telex  051-9407 8641
Cables OWBUNKER
E-Mail wwsingapore@owbunker.com.sg
Internet http://www.owbunker.com

Per telegraphic transfer directly to our account without deduction
of bank charges which are for buyers account

Co. Reg. No. 199201808K
GST Reg. No. M2-0106089-3

# EXHIBIT 13

# O.W. BUNKER FAR EAST (S) PTE LTD. EAST

**W Bunker**

APL Co Pte Ltd
9 North Buona Vista Drive
#14 01 The Metropolis Tower 1
SG 138588 Singapore
Republic of Singapore
M APL Bunker

300 Beach Road #32 01/03
The Concourse
Singapore 199555
Singapore
Phone +65 631 70 000
Fax +65 639 81 270
Telex 051 9407 6641
Cables OWBUNKER
E Mail wwsingapore@owbunker.com sg
Internet http //www owbunker com
Co Reg No 199201808K
GST Reg No M2-0106089 3
ING Bank N V
IBAN NL95 INGB 0020 1182 44
IBAN NL58 INGB 0651 3629 97
SWIFT INGBNL2A
USD acc no 2100 5005 952958

SINGAPORE  3 October 2014

## Sales Order Confirmation

| | |
|---|---|
| Sales Order No | **197-19141** |

We are hereby pleased to acknowledge receipt of your order as follows

| | |
|---|---|
| **Vessel** | APL SOUTHAMPTON (IMO 9462017) |
| **Port** | SAN PEDRO(CA USA) |
| **Delivery date** | 14 October 2014 |
| **Seller** | O W BUNKER FAR EAST (S) PTE LTD |
| **Your ref** | |
| **Account** | MASTER AND/OR OWNER AND/OR CHARTERERS AND/OR MV APL SOUTHAMPTON AND/OR APL CO PTE LTD |

| Quantity | Unit | Product / Quality | Curr | Price | Unit | Supplier |
|---|---|---|---|---|---|---|
| 3 000 00 | MT | Fueloil 700 CST 3 5% | USD | 534 00 | MT | O W Bunker USA Inc |

| | |
|---|---|
| **Agent** | |
| **Payment** | WITHIN 30 DAYS FROM DATE OF SUPPLY UPON PRESENTATION OF INVOICE (ORIGINAL/TELEX/FAX) COPY OF DELIVERY RECEIPT WILL BE FORWARDED WHEN WE HAVE RECEIVED SAME |
| **Remarks** | AS PER ISO 8217 2005 (E) |
| | USD 450 if delivery at anchorage |
| | C A Tax if applicable |
| | If delivers October 13 (Columbus Day) then holiday charges will apply  $250/hour min 8 hours |
| | Operational Contact |
| | Diana Eikrem |
| | Mobile +1 281 910 0351 |

We thank you for this nomination

Kind Regards

Leng Sze Chan

| | |
|---|---|
| **Direct** | +65 6317 0057 |
| **Mobile** | +65 9669 4663 |
| **Yahoo ID** | lsch_owbunker |
| **E Mail** | lscn@owbunker com sg |
| **Office E Mail** | owosineast@owbunker com sg |

# EXHIBIT 14

# O.W. Bunker North America Inc.

Two Stamford Plaza 15th Floor
281 Tresser Boulevard
Stamford CT 06901



## Bunker delivery receipt

| | | | |
|---|---|---|---|
| Delivery date | _(handwritten)_ | Alongside | _(handwritten)_ |
| Receiving vessel | _(handwritten)_ | Hose connected | _(handwritten)_ |
| IMO number | _(handwritten)_ | Commenced pumping | |
| Flag | _(handwritten)_ | Completed pumping | |
| Port/location | _(handwritten)_ | Hose disconnected | |
| Bound for | _(handwritten)_ | Departure | |
| Delivered by | _(handwritten)_ | | |

| Description Product delivered | Litres Net @ 15 °C | BBLS Net | Metric tons in air (3 decimal) | BBLS Gross |
|---|---|---|---|---|
| _(handwritten)_ | | | | |
| | | | | |
| | | | | |

| | HS RMG380 | LSRMG380 | Marine Gas Oil | Marine Gas Oil |
|---|---|---|---|---|
| Kinematic viscosity @ 50 °C | | | | |
| Density in kg/m³ @ 15 C per ISO 3675 | | | | |
| Water content % | | | | |
| Sulphur content m e per ISO 8754 | | | | |
| Flash point °F | | | | |
| Pour point °F | | | | |
| API Gravity @ °F | | | | |
| Ash content | | | | |
| Delivered temperature °C | | | | |
| **Sample seal numbers** | | | | |
| Receiving vessel | | | | |
| Barge | | | | |

| Remarks |
|---|
| |

Received the above in good condition
Also received three representative drip samples each grade collected from ship manifold whilst bunkering
Page 1 Administration Page 2 Barge Page 3 Receiving vessel Page 4 Receiving vessel
Fuel oil supplied is in conformity with Marpol regulation 14(1) and 18(1) According to regulation 4(a) the sulphu
content of fuel oil used on board ships in a SOx emission control area must not exceed 1 0 % m m

Supplie s stamp and signature          Vessels stamp          Signature chief engineer Master

# EXHIBIT 15

# W Bunker

| MV API SOUTHAMPTON<br>AS FOR OWNERS CHARTERERS | TAX INVOICE | |
|---|---|---|
| | | |

API Co Pte Ltd
9 North Buona Vista Drive
14-01 The Metropolis Tower 1
Singapore SG-138588
Singapore

*16404*

| | | |
|---|---|---|
| DATE OF INVOICE | : | 15 October 2014 |
| INVOICE NO | : | 197-1410065 |
| ORDER NO | : | 197-1911H |
| DATE OF SUPPLY | : | 15 October 2014 |

PORT  SAN PEDROG (USA)
YOUR REFERENCE

| | | |
|---|---|---|
| DUE DATE | : | 13 November 2014 |

| Quantity supplied | Quality description | Price per | Invoice amount |
|---|---|---|---|
| 3 009 881 MT | Fueloil 700 CST 3 5% | $534 00 MT | 1 607 276 48 |
| | EXCHANGE RATE USD 1 SGD 1 2 50 | | |

*201'1*
*72800 58191*

| | | | |
|---|---|---|---|
| | Add Tax 70 000 % USD | | 0 00 |
| | Total | USD | 1 607 276 48 |

EXCHANGE RATE USD 1 USD 1 0000
USD

TERMS OF PAYMENT

| BANK | ING Bank N V | | O W BUNKER FAR EAST (S) PTE LTD EAST |
|---|---|---|---|
| ACCOUNT | IBAN NL95 INGB 0020 1152 11<br>IBAN NL58 INGB 0651 3639 9 | USD in full without deduction<br>EUR | |
| | SWIFT INGBNL2A | | |

# **EXHIBIT 16**

# O.W. BUNKER FAR EAST (S) PTE LTD. EAST

## W Bunker

APL Co Pte Ltd
9 North Buona Vista Drive
#14 01 The Metropolis Tower
SG  138588 Singapore
Republic of Singapore
M APL Bunker

300 Beach Road #32 01/03
The Concourse
Singapore 199555
Singapore
Phone  +65 631 70 000
Fax    +65 639 81 270
Telex  051 9407 664'
Cables  OWBUNKER
E Mail  wwsingapore@owbunker com sg
Internet  http //www owbunker com
Co Reg No 199201808K
GST Reg No M2 0106089 3
ING Bank N V
IBAN  NL95 INGB 0020 1182 44
IBAN  NL58 INGB 0651 3629 97
SWIFT  INGBNL2A
USD acc no  2100 5005 952958

## Sales Order Confirmation

SINGAPORE  3 October 2014

| | |
|---|---|
| **Sales Order No** | **197-19140** |

We are hereby pleased to acknowledge receipt of your order as follows

| | |
|---|---|
| **Vessel** | APL THAILAND (IMO 9077123) |
| **Port** | SAN PEDRO(CA USA) |
| **Delivery date** | 15 October 2014 |
| **Seller** | O W BUNKER FAR EAST (S) PTE LTD |
| **Your ref** | |
| **Account** | MASTER AND/OR OWNER AND/OR CHAR ERERS AND/OR MV APL THAILAND AND/OR APL CO PTE LTD |

| Quantity | Unit | Product / Quality | Curr | Price Unit | Supplier |
|---|---|---|---|---|---|
| 1 900 00 | MT | Fuelo 700 CST 3 5% | USD | 534 00 MT | O W B nker USA Inc |

| | |
|---|---|
| **Agent** | |
| **Payment** | WITHIN 30 DAYS FROM DATE OF SUPPLY UPON PRESENTATION OF INVOICE (ORIGINAL/TELEX/FAX) COPY OF DELIVERY RECEIPT WILL BE FORWARDED WHEN WE HAVE RECEIVED SAME |
| **Remarks** | AS PER ISO 82 7 2005 (E) |
| | USD 450 f delivery at anchorage |
| | C A Tax applicable |
| | If de vers October 13 (Columb s Day) then holiday charges will apply  S250/hou  m n 8 hou s |
| | Operational Con act |
| | D ana E krem |
| | Mob e  +  281 910 035' |

We thank you for this nomination

Kind Regards

Leng Sze Chan

| | |
|---|---|
| **Direct** | 65 631 7 0057 |
| **Mobile** | +65 9669 4663 |
| **Yahoo ID** | lsch_owbunke |
| **E-Mail** | lsch@owbunke com sg |
| **Office E Mail** | owbs neas'@owbunker com sg |

# **EXHIBIT 17**

# O.W. Bunker North America Inc.



Two Stamford Plaza 15th Floo
281 Tresser Boulevard
Stamford CT 06901

## Bunker delivery receipt

| | | | |
|---|---|---|---|
| Delivery date | | Alongside | |
| Receiving vessel | | Hose connected | |
| IMO number | | Commenced pumping | |
| Flag | USA | Completed pumping | |
| Port/location | | Hose disconnected | |
| Bound for | | Departure | |
| Delivered by | | | |

| Description Product delivered | Litres Net @ 15℃ | BBLS Net | Metric tons in air (3 decimal) | BBLS Gross |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| | HS FMG380 | LSRMG380 | Marine Gas Oil | Marine Gas Oil |
|---|---|---|---|---|
| Kinematic viscosity @ 50℃ | | | | |
| Density in kg m³ @ 15℃ per ISO 3675 | | | | |
| Water content % | | | | |
| Sulphur content in % per ISO 8751 | | | | |
| Flash point ℉ | | | | |
| Pour point ℉ | | | | |
| API Gravity @ ℉ | | | | |
| Ash content | | | | |
| Delivered temperature ℃ | | | | |
| **Sample seal numbers** | | | | |
| Receiving vessel | | | | |
| Barge | | | | |

| Remarks |
|---|

Received the above in good condition
Also received three representative drip samples each grade delivered from ships manifold whilst bunkering
Page 1 Administration  Page 2 Barge  Page 3 Receiving vessel  Page 4  Receiving vessel
Fuel oil supplied is in conformity with Marpol regulation 14(1) and 18(1)  According to regulation 4(a)  the sulphur
content of fuel oil used on board ships in a SOx emission control area must not exceed 1.0 % m m

| Suppliers stamp and signature<br>Lily Stein<br>Otr  12182 | Vessels stamp | Signature chief engineer/Master |
|---|---|---|

# **EXHIBIT 18**

W Bunker

M/V API THAILAND                                    TAX INVOICE
AND/OR OWNERS/CHARTERERS

API Co Pte Ltd                          DATE OF INVOICE    15 October 2014
9 North Buona Vista Drive
14-01 The Metropolis Tower 1    16410   INVOICE NO         197 1410066
Singapore SG 138588
Singapore                               ORDER NO           197 13 0

                                        DATE OF SUPPLY    ( 15 October 2014 ) ←

PORT  SAN PEDRO(CA USA)                 DUE DATE           13 November 2014
YOUR REFERENCE

| Quantity supplied | Quality description | Price per | Invoice amount |
|---|---|---|---|
| 1 900 684 MT | Fueloil 380 CST % S | $ 400 MT | 1 011 947 6 |

                EXCHANGE RATE USD 1  SGD 1 2750

*(handwritten)* 100001 7027
2011
2250142700

                                EXCHANGE RATE  USD 1  USD 1 0000

        VAT Tax 70 000     SD        0

        Total              SD     1 011 9

EXCHANGE RATE  USD 1  USD 1 0000
USD
1 h           1 0    1

TERMS OF PAYMENT    0    1          1   1      1   0 1 1
              1    1   1                  d     1   1 1   1

BANK        ING bank NV                         O W BUNKER FAR EAST (S) PTE LTD EAST

ACCOUNT     IBAN  L95 NCB 02 LN 1     USD and all cy reference    S1
            IBAN NL95 NCB 0 1 0       EUR

            SWIFT INGB L 2A                                       1
                                                                 1
                                                                         21
                                                       11

     1                  1                                    1

# EXHIBIT 19

O.W  BUNKER FAR EAST (S) PTE LTD  EAST

## W. Bunker

AP  Co P e l o
9 Nort Buona Vis a Drve
#14 0  The Metrooo s Tower 1
SC  138588 Singapo e
Repub ic o' S ngapore
Ms  Tan St u X an

300 Beach Road #32 01/03
The Concourse
Singapore 199555
S ngapore
Phone  +65 631 70 000
Fax   +65 639 81 270
Telex  051 9407 664 1
Caples  OWBUNKER
E Mail  wwsingapore@owbunker com sg
Internet  nttp //www owbunker com
Co  Reg  No  199201808K
GST Reg  No  M2 0106089 3
ING Bank N V
IBAN  NL95 INGB 0020 1182 44
IBAN  NL58 INGB 0651 3629 97
SWIFT  INGBNL2A
USD acc no  2100 5005 952958

SINGAPORE   15  October 2014

## Sales Order Confirmation

| Sales Order No | 197 19171 |
|---|---|

We are hereby pleased to acknowledge receipt of your order as follows

| Vessel | APL CHINA (IMO  9074389) |
|---|---|
| Port | SAN PEDRO(CA USA) |
| Delivery date | 21  October 2014 |
| Seller | O W  BUNKER FAR EAST (S) PTE LTD |
| Your ref | |
| Account | MASTER AND/OR OWNER AND/OR CHARTERERS AND/OR MV APL CHINA AND/OR APL CO  PTE  LTD |

| Quantity | Unit | Product / Quality | Curr | Price | Unit | Supplier |
|---|---|---|---|---|---|---|
| 1 580 00 | M T | Fue o I 700 CST 3 5% | USD | 519 00 | M T | OW |

| Agent | |
|---|---|
| Payment | WITHIN 30 DAYS FROM DATE OF DELIVERY UPON PRESENTAT ON OF INVO CE (ORIGINAL/TELEX/FAX) COPY OF DELIVERY RECEIPT WIL  BE FORWARDED WHEN WE HAVE RECEIVED SAME |
| Remarks | S450 anchorage fee f appl cable 9 / sales tax on app icab e qty |

We thank you for this nomination

Kind Regards

Leng Sze Chan

| Direct | 65 631 7 0057 |
|---|---|
| Mobile | 65 9669 4663 |
| Yahoo ID | sc _owb nker |
| E Mail | sc @owb nker com sg |
| Office E Mail | owos heast@owounker com sg |

**EXHIBIT 20**

# O.W. Bunker North America Inc.

The Stamford Plaza 15th Floor
281 Tresser Boulevard
Stamford, CT 06901



## Bunker delivery receipt

| | | | |
|---|---|---|---|
| Delivery date | | Alongside | |
| Receiving vessel | | Hose connected | |
| IMO number | | Commenced pumping | |
| Flag | | Completed pumping | |
| Port/location | | Hose disconnected | |
| Bound for | | Departure | |
| Delivered by | | | |

| Description<br>Product delivered | Litres<br>Net @ 15°C | BBLS<br>Net | Metric tons in air<br>(3 decimal) | BBLS<br>Gross |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

| | HSFO G380 | LSRMG380 | Marine Gas Oil | Marine Gas Oil |
|---|---|---|---|---|
| Kinematic viscosity @ 50 C | | | | |
| Density in kg/m3 @ 15 C per ISO | | | | |
| Water content | | | | |
| Sulphur content in % per ISO 8754 | | | | |
| Flash point F | | | | |
| Pour point F | | | | |
| API Gravity @ F | | | | |
| Ash content | | | | |
| Delivered temperature | | | | |

**Sample seal numbers**

| | | | | |
|---|---|---|---|---|
| Receiving vessel | | | | |
| Barge | | | | |

| Remarks |
|---|

Received the above in good condition
Also received the representative ship sample/each grade collected from ship manifold valve ___ further
Page 1 Administrator Page 2 Barge Page 3 Receiving vessel Page 4 Receiving vessel
Fuel oil supplied is in conformity with Marpol regulation 14.1) and 18(h) According to regulation 4 a the sulphur
content of fuel oil used on board ships in a SOx emission control area must not exceed 1.0% m/m


Suppliers stamp and signature


Vessels stamp

Signature chief engineer/Master



# **EXHIBIT 21**

# W Bunker

MSN  API CHINA
AND/OR OWNERS/CHARTERERS

TAX INVOICE

API Co Pte Ltd
9 North Buona Vista Drive
14-01 The Metropolis Tower 1
Singapore SG  138588
Singapore

*16435*

DATE OF INVOICE  :  22 October 2014

INVOICE NO         :  197 1410089

ORDER NO           :  197 19174

DATE OF SUPPLY  :  22 October 2014

PORT  SAN PEDRO(CA USA)
YOUR REFERENCE

DUE DATE          :  20 November 2014

| Quantity supplied | Quality description | Price per | Invoice amount |
|---|---|---|---|
| 1 577 829 MT | Fueloil 380 CST > 5% | $19.00  MT | $18 895.28 |

EXCHANGE RATE USD 1  SGD 1.2718

*100001702~~*
*701 1*
*225014321/0*

| | | | |
|---|---|---|---|
| VAT | 0.000 | USD | 0.00 |
| Total | | USD | $18 895.28 |

EXCHANGE RATE USD 1  USD 1.0000
USD

TERMS OF PAYMENT

BANK          ING Bank N V

ACCOUNT      IBAN NL98 INGP 0030 1157 14
             IBAN NL98 INGB 0651 65 02

             SWIFT INGBNL2A

O W BUNKER FAR EAST (S) PTE LTD EAST

# **EXHIBIT 22**

# O W  BUNKER FAR EAST (S) PTE LTD  EAST

**(W) Bunker**

A? Co Pte Ltd
9 North Buona Vista Drive
# 4 01 The Metropolis Tower 1
SG  138588 Singapore
Republic of Singapore
Ms Janet Ng

300 Beach Road #32 01/03
The Concourse
Singapore 199555
Singapore
Phone  +65 631 70 000
Fax    +65 639 81 270
Telex  051 9407 664 1
Cables OWBUNKER
E Mail wwsingapore@owbunker com sg
Internet http //www owbunker com
Co Reg No 199201808K
GST Reg No M2 0106089 3
ING Bank N V
IBAN NL95 INGB 0020 1182 44
IBAN NL58 INGB 0651 3629 97
SWIFT INGBNL2A
USD acc no 2100 5005 952958

## Sales Order Confirmation

**Sales Order No**        197-19182

We are hereby pleased to acknowledge receipt of your order as follows

| | |
|---|---|
| **Vessel** | APL EGYPT (IMO 9196905) |
| **Port** | SAN PEDRO(CA USA) |
| **Delivery date** | 27 October 2014 |
| **Seller** | O W BUNKER FAR EAST (S) PTE LTD |
| **Your ref** | |
| **Account** | MASTER AND/OR OWNER AND/OR CHARTERERS AND/OR MV APL EGYPT AND/OR APL CO PTE LTD |

SINGAPORE  17 October 2014

| Quantity | Unit | Product / Quality | Curr | Price | Unit | Supplier |
|---|---|---|---|---|---|---|
| 900 00 | MT | Fueloil 700 CST 3 5% | USD | 474 00 | MT | O W Bunker USA Inc |
| 70 00 | MT | Gasoil 0 1% | USD | 794 00 | MT | O W Bunker USA Inc |

| | |
|---|---|
| **Agent** | Norton Lily |
| **Payment** | WITHIN 30 DAYS FROM DATE OF SUPPLY UPON PRESENTATION OF INVOICE (ORIGINAL/TELEX/FAX) COPY OF DELIVERY RECEIPT WILL BE FORWARDED WHEN WE HAVE RECEIVED SAME |
| **Remarks** | C A Tax if Applicable $450 usd if delivery a a crorage |

We thank you for this nomination

Kind Regards

Leng Sze Chan

| | |
|---|---|
| **Direct** | +65 631 7 0057 |
| **Mobile** | +65 9669 4663 |
| **Yahoo ID** | scn owbunker |
| **E Mail** | scn@owbunker com sg |
| **Office E Mail** | owbsineast@owbunker com sg |

# EXHIBIT 23

# O.W. Bunker North America Inc.

Two Stamford Plaza, 15th Floor
281 Tresser Boulevard
Stamford, CT, 06901



## Bunker delivery receipt

| | | | |
|---|---|---|---|
| Delivery date: | 10-27-14 | Alongside: | 1558 |
| Receiving vessel: | APL EGYPT | Hose connected. | 1835 |
| IMO number: | | Commenced pumping: | 1840 |
| Flag: | U/A | Completed pumping: | 2310 |
| Port/location: | LA BRG 89 | Hose disconnected: | |
| Bound for: | N/A | Departure: | |
| Delivered by: | DAVID FANNING | | |

| Description Product delivered | Litres Net @ 15℃ | BBLS Net | Metric tons in air (3 decimal) | BBLS Gross |
|---|---|---|---|---|
| LSD MA | N/A | 506.26 | 70.36 | 508.96 |
| HS RMK 700 | N/A | 11875.20 | 1901.575 | 12151.03 |

| | HS RM[g]2.00 RMK 700 | LSRMG380 | Marine Gas Oil | Marine Gas Oil |
|---|---|---|---|---|
| Kinematic viscosity @ 50℃ | 300 | | | 2.96 |
| Density in kg/m³ @ 15℃ per ISO 3675 | 1008.6 | This goods and/or service had been ordered | | 875.7 |
| Water content, % | U/A | and are being accepted solely for account | | N/A |
| Sulphur content in % per ISO 8754 | 3.49 | of the time- charterers of this vessel. Under the applicable charter party | | 0.05 |
| Flash point, ℉ | 170 | neither owners and/or bareboat charterers | | 200 |
| Pour point, ℉ | N/A | nor the said vessel are responsible for payment of this service/supply/bill | | N/A |
| API Gravity @ ℉ | 8.7 | and no lien or other claim against the vessel | | 30.0 |
| Ash content | N/A | can arise therefore. | | N/A |
| Delivered temperature, ℃ | 131 | | | 70 |

Sample seal numbers

| | | | | |
|---|---|---|---|---|
| Receiving vessel: | A 50048203 B 50048235 | | | 50048279 |
| | | | | 50048254 |
| Barge: | 50048193 | | | 50048243 |

Remarks:

Received the above in good condition.
Also received three representative drip samples each grade collected from ship manifold whilst bunkering
Page 1: Administration. Page 2: Barge. Page 3:Receiving vessel  Page 4: Receiving vessel.
"Fuel oil supplied is in conformity with Marpol regulation 14(1) and 18(1). According to regulation 4(a), the sulphur content of fuel oil used on board ships in a SOx emission control area must not exceed 1,0 % m/m"

Suppliers stamp and signature
David Fanning
1214967

MV" APL EGYPT"
CHIEF ENGINEER
MONROVIA

Vessels stamp

Signature chief engineer/Master

IBIA

# EXHIBIT 24

# W Bunker

M/V API EGYPT
AND OF OWNERS CHV&TERERS

API Co Pte Ltd
9 North Buona Vista Drive
14-01 The Metropolis Tower 1
Singapore SG-138588
Singapore

**FAX INVOICE**

| | |
|---|---|
| DATE OF INVOICE | : 27 October 2014 |
| INVOICE NO | 197 141009? |
| ORDER NO | 197 191X? |
| DATE OF SUPPLY | : ? October 2014 |
| DUE DATE | : 25 November 2014 |

PORT SAN PEDRO(CA USA)
YOUR REFERENCE

| Quantity supplied | Quality description | Price per | Invoice amount |
|---|---|---|---|
| 1901 878 MT | Fueloil 700 CST 3 5% | 47100 MT | 984 346 58 |
| 79 360 MT | Gasoil 0 1% | 79100 MT | 88 865 84 |

EXCHANGE RATE USD 1 SGD 1 2718

| | | | |
|---|---|---|---|
| | Add tax 4 1000 USD | | 6 30 |
| | Total | USD | 98 712 89 |

EXCHANGE RATE USD USD 1 0000
USD
The price is exel prices and other tax

TERMS OF PAYMENT

BANK          ING Bank NV

ACCOUNT       IBAN NL95 INGB 0020 1157 ??          USD and other currencies
              IBAN NL58 INGB 0658 3639 97          EUR

              SWIFT INGBNL2A

O W BUNKER FAR EAST (S) PTE LTD  EAST

# **EXHIBIT 25**

# O.W. BUNKER FAR EAST (S) PTE LTD. EAST



APL Co Pte Ltd
9 North Buona Vista Drive
#14-01 The Metropolis Tower 1
SG 138588 Singapore
Republic of Singapore
Ms Tan Shu Xian

300 Beach Road #32-01/03
The Concourse
Singapore 199555
Singapore
Phone  +65 631 70 000
Fax    +65 639 81 210
Telex  051-9407 6541
Cables  OWBUNKER
E-Mail  wwsingapore@owbunker.com.sg
Internet  http //www owbunker com
Co Reg No  199201808K
GST Reg No  M2-0106089-3
ING Bank N V
IBAN NL95 INGB 0020 1182 44
IBAN NL58 INGB 0651 3629 97
SWIFT INGBNL2A
USD acc no  2100 5005 952958

## Sales Order Confirmation

**Sales Order No.**      197-19183

We are hereby pleased to acknowledge receipt of your order as follows

| | |
|---|---|
| **Vessel** | APL PHILIPPINES (IMO 9077276) |
| **Port** | SAN PEDRO(CA USA) |
| **Delivery date** | 29 October 2014 |
| **Seller** | O W  BUNKER FAR EAST (S) PTE LTD |
| **Your ref** | |
| **Account** | MASTER AND/OR OWNER AND/OR CHARTERERS AND/OR MV APL PHILIPPINES AND/OR APL CO  PTE  LTD |

SINGAPORE   20  October 2014

| Quantity | Unit | Product / Quality | Curr | Price | Unit | Supplier |
|---|---|---|---|---|---|---|
| 2 665 00 | MT | Fueloil 700 CST 3 5% | USD | 474 00 | MT | O W Bunker USA  Inc |

| | |
|---|---|
| **Agent** | Norton Lily |
| **Payment** | WITHIN 30 DAYS FROM DATE OF SUPPLY UPON PRESENTATION OF INVOICE (ORIGINAL/TELEX/FAX)  COPY OF DELIVERY RECEIPT WILL BE FORWARDED WHEN WE HAVE RECEIVED SAME |
| **Remarks** | C A  Tax if Applicable<br>S450 usd if supply at Anchorage |

We thank you for this nomination

Kind Regards

Keith Lee

| | |
|---|---|
| **Direct** | +65 6317 0015 |
| **Mobile** | +65 8183 9534 |
| **Yahoo ID** | kele_owbunker |
| **E-Mail** | kele@owbunker com sg |
| **Office E-Mail** | owbs neast@owbunker com sg |

# **EXHIBIT 26**

# O.W. Bunker North America Inc.

Two Stamford Plaza 15th Floor
28  Tresser Boulevard
Stamford  CT  06901



## Bunker delivery receipt

| | | | |
|---|---|---|---|
| Delivery date | *10-29-14* | Alongside | *1440* |
| Receiving vessel | *APL PHILIPPINES* | Hose connected | ~~*1620*~~ *1545* |
| IMO number | | Commenced pumping | *1620* |
| Flag | | Completed pumping | *0035  10/30/14* |
| Port/location | *LA303* | Hose disconnected | *0143* |
| Bound for | | Departure | |
| Delivered by | *DAVID FANNING* | | |

| Description Product delivered | Litres Net @ 15°C | BBLS Net | Metric tons in air (3 decimal) | BBLS Gross |
|---|---|---|---|---|
| *HSRMK 700* | | *16644.34* | *2665.258* | *17023.97* |
| | | | | |
| | | | | |
| | | | | |

| | *HSRMK700* ~~HS RMG380~~ | LSRMG380 | Marine Gas Oil | Marine Gas Oil |
|---|---|---|---|---|
| Kinematic viscosity @ 50°C | *300* | | | |
| Density in kg/m³ @ 15°C per ISO 3675 | *100·6* | | | |
| Water content  % | | | | |
| Sulphur content  n % per ISO 8754 | *3·44* | | | |
| Flash point  F | *170* | | | |
| Pour point  °F | | | | |
| API Gravity @ °F | *8·7* | | | |
| Ash content | | | | |
| Delivered temperature  °C | *130* | | | |
| Sample seal numbers | | | *MARPOL* | *Marpol* |
| Receiving vessel | | | *500 48731* | *B016998* |
| | | | *500 48738* | *B016997* |
| | | | | *B016999 LAB* |
| Barge | | | *500 48722* | *B017500* |

| Remarks | |
|---|---|

Received the above in good condition
Also received three representative drip samples of each grade collected form ship manifold whilst bunkering
Page 1  Administration  Page 2  Barge  Page 3  Receiving vessel  Page 4  Receiving vessel
Fuel oil supplied is in conformity with Marpol regulation 14(1) and 18(1)  According to regulation 14(4)  the sulphur
content of fuel oil used on board ships in a SOx emission control area must not exceed 1 0 % m m

Suppliers stamp and signature          Vessels stamp          Signature chief engineer/Master

**EXHIBIT 27**



M/V  APL PHILIPPINES
AND/OR OWNERS/CHARTERERS

APL Co. Pte. Ltd.
9 North Buona Vista Drive
#14-01 The Metropolis Tower 1
Singapore, SG- 138588
Singapore

PORT:  SAN PEDRO(CA USA)
YOUR REFERENCE:

**TAX INVOICE**

| | | |
|---|---|---|
| DATE OF INVOICE | : | 30. October 2014 |
| INVOICE NO | : | 197-1410105 |
| ORDER NO. | : | 197-19183 |
| DATE OF SUPPLY | : | 30. October 2014 |
| DUE DATE | : | 28. November 2014 |

| Quantity supplied | Quality/description | Price/per | Invoice amount |
|---|---|---|---|
| 2,665.258  MT | Fueloil 700 CST 3,5% | 474.00  MT | 1,263,332.29 |
| | (Exchange Rate : USD 1 = SGD 1.2720) | | |

| | | | |
|---|---|---|---|
| Add Tax @ 0.000% | USD | | 0.00 |
| Total | | USD | 1,263,332.29 |

EXCHANGE RATE : USD 1 = USD 1.0000
USD:
The prices are excl. all taxes and/or other fees.

**TERMS OF PAYMENT** 30 days from date of supply With value date not later than DUE DATE or previous working day
when it is a holiday. In case of delays in payment interest will be charged in accordance with our valid General Terms and Conditions

BANK:       ING Bank N.V.

ACCOUNT:    IBAN: NL95 INGB 0020 1182 44
            IBAN: NL58 INGB 0651 3629 97

            SWIFT: INGBNL2A

USD and all other currencies
EUR

**O.W. BUNKER FAR EAST (S) PTE. LTD. EAST**
300 Beach Road
#32-01/03  The Concourse
SINGAPORE 199555

Phone  +65 631 70 000
Fax    +65 639 81 270

Telex  051-9407 6641
Cables  OWBUNKER
E-Mail  wwsingapore@owbunker.com.sg
Internet  http://www.owbunker.com

Co Reg  No 199201808K
GST Reg  No M2-0106089 3

Per telegraphic transfer directly to our account without deduction
of bank charges which are for buyers account

**EXHIBIT 28**

# O.W. BUNKER FAR EAST (S) PTE LTD. EAST

(W) **Bunker**

APL Co  Pte  Ltd
9 North Buona Vista Drive
#14-01 The Metropolis Tower 1
SG- 138588 Singapore
Republic of Singapore
M  APL Bunker

300 Beach Road #32-01/03
The Concourse
Singapore 199555
Singapore
Phone  +65 631 70 000
Fax    +65 639 81 270
Telex  051-9407 6641
Cables  OWBUNKER
E-Mail  wwsingapore@owbunker com sg
Internet  http://www owbunker com
Co Reg No  199201808K
GST Reg  No  M2-0106089-3
ING Bank N V
IBAN  NL95 INGB 0020 1182 44
IBAN  NL58 INGB 0651 3629 97
SWIFT  INGBNL2A
USD acc no  2100 5005 952958

SINGAPORE   28  October 2014

## Sales Order Confirmation

| | |
|---|---|
| Sales Order No. | **197-19219** |

We are hereby pleased to acknowledge receipt of your order as follows

| | |
|---|---|
| Vessel | APL YANGSHAN (IMO  9462031) |
| Port | SAN PEDRO(CA USA) |
| Delivery date | 3  November 2014 |
| Seller | O W  BUNKER FAR EAST (S) PTE LTD |
| Your ref | |
| Account | MASTER AND/OR OWNER AND/OR CHARTERERS<br>AND/OR M / APL YANGSHAN<br>AND/OR APL CO  PTE LTD |

| Quantity | Unit | Product / Quality | Curr | Price  Unit | Supplier |
|---|---|---|---|---|---|
| 185 00 | MT | Gasoil 0 1% | USD | 755 00  MT | O W  Bunker USA  Inc |

| | |
|---|---|
| Agent | |
| Payment | WITHIN 30 DAYS FROM DATE OF SUPPLY UPON PRESENTATION OF INVOICE<br>(ORIGINAL/TELEFAX)  COPY OF DELIVERY RECEIPT WILL BE FORWARDED WHEN WE HAVE<br>RECEIVED SAME |
| Remarks | ISO 8217 2010 (E) |
| | USD 450 if delivery at anchorage<br>C A  Tax if applicable<br>Operational Contact<br>Diana Eikrem<br>Mobile  +1 281 910 0351 |

We thank you for this nomination

Kind Regards

Leng Sze Chan

| | |
|---|---|
| Direct | +65 6317 0057 |
| Mobile | +65 9669 4663 |
| Yahoo ID | lsch_owbunker |
| E-Mail | lsch@owbunker com sg |
| Office E Mail | owbsineast@owbunker com sg |

# EXHIBIT 29

# O.W. Bunker North America Inc.

Two Stamford Plaza, 15th Floor
281 Tresser Boulevard
Stamford, CT, 06901



## Bunker delivery receipt

| | | | |
|---|---|---|---|
| Delivery date | 11-5 - 2 14 | Alongside | 11-5 - -14 |
| Receiving vessel | A P L YANGSHAN | Hose connected | 11-5 - -14   1956 |
| IMO number | | Commenced pumping | 11-5 -   2 C |
| Flag | | Completed pumping | 11-5 -14   2 C C |
| Port/location | L A   3 | Hose disconnected | 11-5 -14   2215 |
| Bound for | OAK L A N D , C A | Departure | 11-5 -14 |
| Delivered by | DAVID  FANNING | | |

| Description<br>Product delivered | Litres<br>Net @ 15°C | BBLS<br>Net | Metric tons in air<br>(3 decimal) | BBLS<br>Gross |
|---|---|---|---|---|
| LSDMA | | 1339.73 | 185.0 8 | 1345.77 |
| | | | | |
| | | | | |

| | HS RMG380 | LSRMG380 | Marine Gas Oil | Marine Gas Oil |
|---|---|---|---|---|
| Kinematic viscosity @ 50°C | | | 3 2 | |
| Density in kg/m³ @ 15°C per ISO 3675 | | | 8 4 4 | |
| Water content  % | | | 8 | |
| Sulphur content in % per ISO 8754 | | | 0.0 4 | |
| Flash point  °F | | | 14 | |
| Pour point  °F | | | | |
| API Gravity @  °F | | | | |
| Ash content | | | | |
| Delivered temperature  °C | | | | |

### Sample seal numbers

| | | | | |
|---|---|---|---|---|
| Receiving vessel | 12 2   4 | | V 241967 | VESSEL |
| | 2 2   2 | | V 241963 | LABORATORY |
| Barge | | | V 241962 | BARGE |

Remarks  F  G . 1 .

Received the above in good condition
Also received three representative drip samples each grade collected from ship manifold whilst bunkering
Page 1  Administration  Page 2  Barge  Page 3  Receiving vessel  Page 4  Receiving vessel
*Fuel oil supplied is in conformity with Marpol regulation 14(1) and 18(1)  According to regulation 4(a)  the sulphur
content of fuel oil used on board ships in a SOx emission control area must not exceed 1 0 % m/m

**Westoil Marine Services**
**David Fanning**
Off# 1214967

Suppliers stamp and signature        Vessels stamp        Signature chief engineer/Master

**EXHIBIT 30**

# OW BUNKER GROUP

## Terms and Conditions of sale for Marine Bunkers
## Edition 2013

## A. GENERAL INTRODUCTION

A 1   This is a statement of the terms and conditions according to which the
International O W Bunker Group (hereinafter called "OWB") will sell marine bunkers

A 2   These conditions apply to all offers, quotations, orders, agreements, services and all subsequent
contracts of whatever nature, except where otherwise is expressly agreed in writing by OWB

A 3   General trading conditions of another party will not apply, unless expressly accepted in writing by OWB

A 4   In the case that, for whatever reason, one or more of the (sub)clauses of these general conditions are
invalid, the other (sub)clauses hereof shall remain valid and be binding upon the parties

## B. DEFINITIONS

B 1   Throughout this document the following definitions shall apply

| | |
|---|---|
| "Seller" | means OWB; any office, branch office, affiliate or associate of the OWB Group, being the legal entity within the OWB Group, whose name is included in the Order Confirmation, sent to the Buyer. |
| "Buyer" | means the vessel supplied and jointly and severally her Master, Owners, Managers/Operators, Disponent Owners, Time Charterers, Bareboat Charterers and Charterers or any party requesting offers or quotations for or ordering Bunkers and/or Services and any party on whose behalf the said offers, quotations, orders and subsequent agreements or contracts have been made, |
| "Bunkers" | means the commercial grades of bunker oils as generally offered to the Seller's customers for similar use at the time and place of delivery and/or services connected thereto, |
| "Owner" | means the registered Owner, Manager or Bareboat Charterer of the vessel, |
| "Vessel" | means the Buyer's Vessel, Ship, Barge or Off-Shore Unit that receives the supply/bunkers, either as end-user or as transfer unit to a third party, |
| "Nomination" | means the written request/requirement by the Buyer to the Seller for the supply of the Bunkers, |
| "Order Confirmation" | means the written confirmation as issued by the Seller and forwarded to the Buyer to conclude the conclusion of the negotiated sale/purchase of the Bunkers In case of conflict between the Nomination and the Order Confirmation, unless the Seller otherwise agrees in writing, the wording and content of the Order Confirmation is deemed contain the prevailing terms of the Agreement, |
| "Agreement" | means the concluded terms for the sale/purchase of the Bunkers, |
| "Supplier" | means any party instructed by or on behalf of the Seller to supply or deliver the Bunkers, |
| "GTC" | means these General Terms and Conditions which shall govern the contractual regulations between the Seller and the Buyer |
| "BDR" | means the Bunker Delivery Receipt, being the document(s) which is/are signed by the Buyer's representative(s) at the place of the supply of the Bunkers to the Vessel, evidencing the quality and quantity of the Bunkers supplied to and received by the Vessel |

## C. OFFERS, QUOTATIONS AND PRICES

C 1   An Agreement shall only be concluded and binding on the Seller when the Seller sends the Order
Confirmation to the Buyer Each Order Confirmation shall incorporate these GTC by reference so that the
GTC are considered a part of the Confirmation

C 2   Agreements entered into via brokers, or any other authorised representative on behalf of the Seller, shall
only bind the Seller upon the Sellers' broker or other authorised representative sending the Order
Confirmation to the Buyer or the Buyer's broker as the case may be

C 3   The Seller's offer is based on the applicable taxes, duties, costs, charges and price level of components
for Bunkers existing at the time of the conclusion of the Agreement Any later or additional tax,
assessment, duty or other charge of whatever nature and however named, or any increase of
components for Bunkers or any additional costs borne by the Seller whatsoever caused by any change
in the Seller's contemplated source of supply or otherwise, coming into existence after the Agreement
has been concluded, shall be added to the agreed purchase price, provided that the Seller shall give

the Buyer prior notice of this effect within a reasonable (under the prevailing circumstances) time after the Seller becoming aware of the relevant circumstances

C 4      All prices and/or tariffs are exclusive VAT unless specifically stated otherwise Any VAT or other charge and/or tax applicable and whenever imposed shall be promptly paid by the Buyer and unless otherwise agreed in writing all supplies are quoted and invoiced based on quantity calculated quantity in metric tons in vacuum

C 5      If the party requesting Bunkers is not the Owner of the Vessel the Seller shall have the right (but will not be obliged) to insist as a precondition of sale that a payment guarantee is provided by the Owner The Seller shall have the right (but will not be obliged) to cancel any agreement with the Buyer at any time if such payment guarantee is not received upon request thereof from the Seller to the Owner The Seller's decision to forego obtaining a payment guarantee under this Clause C 5 shall have no effect on Seller's right to a lien on the Vessel for any Bunkers supplied under this Agreement

C 6      The Buyer warrants that it is authorized as agent to order Bunkers for the Vessel and that the Seller has a lien on the Vessel for any Bunkers supplied under this Agreement If the party requesting Bunkers is not the Owner of the Vessel, Buyer assumes the sole responsibility for communicating the terms and conditions of this Agreement to the Owner of the Vessel prior to the date of delivery

C 7      If at any time before the delivery the financial standing of the Buyer appears to the Seller (in its absolute discretion) to have become impaired or unsatisfactory the Seller may require cash payment or security to be provided by the Buyer prior to delivery failing which the Seller may cancel the delivery without any liability on the part of the latter or its subcontractors

## D.    SPECIFICATIONS (QUALITY – QUANTITY)

D 1      The Buyer assumes the sole responsibility for the choice of nominating the quantity and quality of Bunkers and determine (if applicable) potential compatibility with any Bunkers already on board the Vessel The Buyer also assumes sole responsibility for the selection and fitness of its choice of Bunkers for any particular use or purpose and the Seller shall assume no responsibility whatsoever for the compliance or fitness of the Bunkers for a specific type of engine or equipment which the Buyer may or may not have agreed upon in any C/P (Charterparty) term or otherwise This includes but is not limited to the quality sulphur content and any other specific characteristics of the Bunkers whatsoever Any and all warranties regarding the satisfactory quality merchantability fitness for purpose description or otherwise are hereby excluded and disclaimed
Where specifications designate a maximum value no minimum value is guaranteed unless expressly stated in the Order Confirmation and conversely where minimum values are provided in a specification no maximum values are guaranteed unless expressly stated in the Order Confirmation

D 2      The quality and quantity shall be as agreed between the Seller and the Buyer and shall correspond to the Seller s Order Confirmation Unless otherwise agreed in writing the Bunkers are delivered and sold based on metric tons in vacuum

D 3      Where standard specifications are being given or referred to tolerances in accordance with ISO 4259 in respect of Reproducibility/Repeatability in quality are to be accepted without compensation or other consequences whatsoever

D 4      In respect of the quantity agreed upon the Seller shall be at liberty to provide and the Buyer shall accept a variation of 5% from the agreed quantity with no other consequence than a similar variation to the corresponding invoice from the Seller

D 5      Information regarding the typical characteristics of the Bunkers at any delivery location shall only be indicative of the Bunkers that have been made available at that location and shall not form a part of the specification of the Bunkers to be delivered All grades of produce may contain petroleum industry allowed bio-derived components

## E.    MEASUREMENTS – NON CLAUSING OF THE BDR(S)

E 1      The quantities of bunkers shall be determined only from the official gauge or meter of the bunkering barge tank truck or of the shore tank in case of delivery ex wharf

E 2      The Buyer's representative shall together with the Seller's representative measure and verify the quantities of Bunkers delivered from the tank(s) from which the delivery is made When supplied by bunkering barge/tanker the particular barge/tanker will present its tank calibration and ullage sounding records which are agreed to be the sole valid and binding document(s) to determine the quantity or quantities supplied Quantities calculated from the Receiving Vessel s soundings shall not be considered

E.3     Should the Buyer's representative fail or decline to verify the quantities, the measurements of quantities made by the Seller or the Supplier shall be final, conclusive and binding and the Buyer shall be deemed to have waived any and all claims in regard to any variance.

E.4     The Buyer expressly undertakes not to make any endorsement, complaint/ comment (including but without limitation any ''No-lien'' clausing) on the BDR when presented for signature by the Buyer's representative(s), any such insertion shall be invalid and of no effect whatsoever.

E.5     In the event of complaint/comment on the quantity of Bunkers delivered, the Buyer or the Master of the Vessel shall give to the Seller/Supplier a letter of protest separately, followed by a complaint in detail to the Seller, setting out the exact quantity(ies) claimed shortsupplied, and with full supporting vouchers, in writing within 7 (seven) days thereof, failing which, any such claim by the Buyer shall be extinguished as non existent, and the Buyer shall be deemed to have expressly waived any such claim against the Seller/Supplier, the relevant claim being time barred, and the Seller/Supplier's weight and measurements shall be conclusive evidence of the quantity of Bunkers delivered.


## F.     SAMPLING

F.1     The Supplier shall arrange for four (4) representative samples of each grade of Bunkers to be drawn throughout the entire bunkering operation. The Buyer's representative has the responsibility to witness that such samples are drawn  correctly and shall confirm his witnessing thereof and also confirm the proper and correct sealing by signing the labels of the sample bottles.

F.2     In case that dripsampling is not available onboard the barge, tanktruck or shore tank, samples shall be taken as a composite of each tank from which supplies are made, onboard the barge (respectively at the shore tank or tanktruck), divided with 1/3 from each the top, mid and bottom of the tanks.

F.3     The samples shall be securely sealed and provided with labels showing the Vessel's name, identity of delivery facility, product name, delivery date and place and seal number, authenticated with the Vessel's stamp and signed by the Seller's representative and the Master of the Vessel or his representative. The seal numbers shall be inserted into the BDR/Bunker Delivery Receipts, and by signing the BDR both parties agrees to the fact that the samples referred to therein are deemed valid and taken in accordance with the requirements as specified in this Chapter F.

F.4     Two (2) samples shall be retained by the Seller for ninety (90) days after delivery of the Bunkers, or if requested by the Buyer in writing, for as long as the Buyer reasonably required. The other two (2) samples shall be retained by the receiving Vessel, one of which being dedicated as the MARPOL sample.

F.5     In the event of a dispute in regard to the quality of the Bunkers delivered, the samples drawn pursuant to this Chapter F, shall be conclusive and final evidence of the quality of the Bunkers delivered. One, and only one, of the samples retained by the Sellers shall be forwarded to an independent laboratory to perform a set of tests, the result of which is to be made available to both parties. Those test results shall be final and binding upon both Buyer and Seller as to the parameters tested. The parties are to use best endeavours to agree the independent laboratory to perform the tests. If, however, no agreement can be reached on the choice of laboratory within 3 days of the Buyer being advised of the Seller opting to have the sample tested, the Seller is at liberty to send the sample to a reputable and independent laboratory of its choice for the tests to be conducted, and those test result will be final and binding upon Buyer and Seller as set out above.

F.6     The seal must be breached only in presence of both parties unless one/both in writing have declared that they will not be present, or fails to be present at the appropriate time and place; and both parties shall have the right to appoint independent person(s) or surveyor(s) to witness the seal breaking.

F.7     No samples subsequently taken shall be allowed as (additional) evidence. If any of the seals have been removed or tampered with by an unauthorised person, such sample(s) shall be deemed to have no value as evidence.

F.8     Any eventual samples drawn by Buyer's personnel either during bunkering or at any later date after bunkering shall not be valid as indicator of the quality supplied. The fact that such samples may eventually bear the signature of personnel on board the barge or tank truck or other delivery conveyance shall have no legal significance as such local personnel have no authority to bind Seller to different contractual terms. Seller shall have no liability for claims arising in circumstances where Buyer may have commingled the products on board the Vessel with other fuels.

**G.**     **DELIVERY**

G 1     The time of delivery  as given by the Seller  has been given as an approximate time  unless it has been otherwise specifically agreed in writing between the parties

G 2     The time of delivery will only be binding upon the Seller when all information necessary for the Seller to comply with its obligations hereunder  have been properly delivered to the Seller in reasonable time before the delivery  In the event the Nomination addresses a spread of dates for delivery  the Seller has the sole discretion to commence the delivery within any time, day/night/sshinc of these dates  always subject to the circumstances set out below in Clause G 3

G 3     The Vessel shall under all circumstances be bunkered as promptly as the prevailing circumstances permit having regard to congestion affecting the delivery facilities of Seller, its Suppliers or Agents and to prior commitments of barges or other delivery means  The Seller and/or the Supplier shall not be liable for any consequences or any time lost due to the Vessel having to wait for berth for bunkering or for completion of bunkering, and unless otherwise agreed in writing, the Seller shall not be obligated to deliver prior to the nominated date or spread of dates  The Seller is not responsible for delays caused by local customs, pilots, port- or other authorities

G 4     In any case the Buyer, unless otherwise agreed in writing, must give not less than 72 (seventy two) hours approximate notice of readiness of the Vessel for delivery, which is to be followed by 48 (forty eight) hours and 24 (twenty four) hours such notices, where the last notice must also specify the exact place of delivery  All these notices must be given to the Sellers and the Seller's representatives/agents in writing

G 5     The Seller shall be entitled to deliver the Bunkers by separate part deliveries, in which case each part delivery shall be construed as a separate delivery

G 6     The Seller shall not be required to deliver any Bunkers if any customs and/or other government permit required for such purpose has not been obtained in due time before the delivery

G 7     If the Seller at any time for any reason believes that there may be a shortage of supply at any place and that as a result thereof it may be unable to meet the demands of all its customers  the Seller may allocate its available and anticipated quantity/ies of Bunkers among its customers in such a manner as it may determine appropriate in its sole discretion

G 8     The Vessel shall be accessible at all times to Seller and Supplier and shall be bunkered as promptly as the circumstances permit  The Seller and/or the Supplier shall not be liable for any demurrage paid or incurred by the Buyer or for any loss  damage or delay of the Vessel (consequential and/or liquidating damages included) of any nature whatsoever due to congestion at the loading terminal  prior commitments of available barges or tank trucks or any other reason

G 9     The Buyer shall ensure that the Vessel provides a free  safe and always afloat and accessible side for the delivery of bunkers and that all necessary assistance as required by the Seller or the Seller s representative is rendered in connection with the delivery  If in the Supplier s opinion clear and safe berth is unavailable  delivery might be delayed or  in Seller s option  cancelled and all costs related to above will be on account of the Buyer

G 10    The Vessel shall moor  unmoor, hoist and lower bunkering hose(s) from the barge(s) whenever required by the Seller  Seller s representative or Supplier free of expenses and in any way as may be requested to assist the barge equipment to a smooth supply  The Buyer shall make and be responsible for all connections and disconnections between the delivery hose(s) and the Vessel's bunker intake manifold/pipe and ensure that the hose(s) are properly secured to the Vessel's manifold prior to commencement of delivery
        During bunkering the Vessel's scuppers must be safely blocked  which blocking must be made by the Vessel s own crew  Furthermore the Vessel must ensure that all pipes and manifolds and receiving tanks are properly checked and ready to receive the bunkers  including but not limited to ensuring proper opening/closing of relevant valves, without any risk for spillages  etc  during the bunkering
        Local further special requirements for receiving bunkers must be followed strictly by the Vessel  whether advised or not by the Seller or the Seller's representative  as it is always the Vessel and the Buyer who remains solely responsible for the knowledge and awareness of such eventual additional requirements for safety reasons

G 11    In the event that the Vessel is not able to receive the delivery promptly  the Buyer is thereby in default and shall pay damages and/or any reasonable demurrage claim to the barging/supplying facilities and shall indemnify the Seller in each and every respect as a result thereof

G 12    Delivery shall be deemed completed and all risk and liabilities  including loss, damage  deterioration depreciation  contamination  evaporation or shrinkage to the Bunkers delivered and responsibility for loss  damage and harm caused by pollution or in any other manner to third parties shall pass to the Buyer

from the time the Bunkers reach the flange/connecting pipe line(s)/delivery hoses provided by the Seller on the barge/ tank truck/shore tank

G 13    If the Buyer for whatever reason is unable or refuses to receive the full quantity ordered the Seller shall have the right to invoice the Buyer for the loss incurred by having to transport the undelivered Bunkers back to the storage or by having to sell the Bunkers in a degraded form or at a lower price The Seller may exercise this right without prejudice to the Seller's other rights for damages or otherwise pursuant to these conditions

G 14    The Vessel shall provide and have appropriate and segregated tanks to receive the contracted quantity of Bunkers and the Vessel shall always be able to perform its own blending on board if any blending is deemed to be required by the Buyer The Vessel shall upon delivery test the Bunkers supplied by running her engines or auxiliaries or equipment for which the Bunkers are supplied for a minimum of 1 (one) hour to determine that the Bunkers are satisfactory In the event the Bunkers are not considered satisfactory the Seller and Supplier are to be notified in writing immediately after such test period has expired Otherwise it shall be deemed that the Bunkers were satisfactory and that in any event the Buyer has waived any right to claim in this regard

G 15    If delivery is required outside normal business hours or on local weekends Saturday Sunday national religious or public holidays the extra expenses incidental to such delivery shall be reimbursed by the Buyer as additional costs

G 16    In the event the Bunker delivery is made by vessel or barge as a ship to-ship transfer any damage caused by contact and/or collision and/or swell and/or other weather or sea related condition or incident is to be dealt with by the Owners directly with the owners of the units involved and Seller/Supplier shall not be held nor be responsible for any such damages If however any of the involved units choose to pursue Seller and/or Supplier Buyer will fully indemnify and hold Seller harmless in relation thereto

G 17    For safety reasons it is agreed that it is solely the Master of the bunkering barge that determines whether mooring alongside is safe taking weather swell and forecasts into consideration Supplier/Seller not to be held responsible for any delays demurrages liquidating damages or similar whatsoever as a result of any eventual delays caused by any decision by the Master of the barge in this connection Supplies being always performed weather permitting

G 18    Without prejudice to any other article(s) herein any and all supply/ies will be based on as per best endeavours only if the receiving Vessel arrives outside the originally agreed time split as per the Order Confirmation forwarded


H       TITLE

H 1     Title in and to the Bunkers delivered and/or property rights in and to such Bunkers shall remain vested in the Seller until full payment has been received by the Seller of all amounts due in connection with the respective delivery The provisions in this section are without prejudice to such other rights as the Seller may have under the laws of the governing jurisdiction against the Buyer or the Vessel in the event of non payment

H 2     Until full payment of the full amount due to the Seller has been made and subject to Article G 14 hereof the Buyer agreed that it is in possession of the Bunkers solely as Bailee for the Seller and shall not be entitled to use the Bunkers other than for the propulsion of the Vessel nor mix blend sell encumber pledge alienate or surrender the Bunkers to any third party or other Vessel

H 3     In case of non or short payment for the Bunkers by the Buyer the Seller is entitled (but not obliged) to repossess the Bunkers without prior juridical intervention without prejudice to all other rights or remedies available to the Seller

H 4     In the event that the Bunkers have been mixed with other bunkers on board the Vessel the Seller shall have the right to trace its proprietary interest in the Bunkers into the mixed bunkers and/or a right of lien to such part of the mixed bunkers as corresponds to the quantity or net value of the Bunkers delivered

H 5     The provisions of this Chapter H do not prejudice or in any way limit the Seller s right to arrest/attach the Vessel and/or sister ship and/or any sister or associate ship and/or other assets of the Buyer (or the Owner of the Vessel or any other party liable) wherever situated in the world without prior notice

H 6     Where notwithstanding these conditions title in and to the Bunkers delivered has passed to the Buyer and/or any third party before full payment has been made to the Seller the Buyer shall grant a pledge over such Bunkers to the Seller The Buyer shall furthermore grant a pledge over any other Bunkers present in the respective Vessel including any mixtures of the delivered Bunkers and other bunkers Such pledge

will be deemed to have been given for any and all claims, of whatever origin and of whatever nature that the Seller may have against the Buyer.

H.7     For the avoidance of doubt, where a mortgagee bank enforces any rights against the Vessel and becomes a mortgagee in possession of the Bunkers then as bailee the mortgage bank is liable to the Seller for fulfilment of the Agreement.


## I.     PAYMENT – MARITIME LIEN

I.1     Payment for the Bunkers and/or the relevant services and/or charges shall be made by the Buyer as directed by the Seller within the period agreed in writing.

I.2     Payment shall be made in full, without any set-off, counterclaim, deduction and/or discount free of bank charges to the bank account indicated by the Seller on the respective invoice(s).

I.3     (i) If at any time after delivery but before the due date the financial standing of the Buyer appears to the Seller (in its sole discretion) to have become impaired or unsatisfying, the Seller may require immediate full payment of all its invoices due and/or those not yet due, or such security as it shall deem to be satisfactory.
        (ii) In the event that the Buyer shall default in making any payment due, the Seller may suspend deliveries of Bunkers until such payment has been made in full (together with default/delay compensation and costs), or the Seller may, in its discretion, elect to treat such default as a serious breach of the Agreement and thereupon terminate the Agreement on whole or in part without prejudice to any claim against the Buyer for damages, including cancellation charges. Such termination or suspension shall not relieve the Buyer of any obligation undertaken by virtue of an Agreement so terminated.
        (iii) Where the Seller has extended any kind of credit facility to a group of companies or associated companies, default by any one relevant Buyer in respect to any invoice of the Seller shall give the right to the Seller to cancel all credit arrangements of the entire group or of all the associates, whereupon sub-clauses I.3.(i) and I.3.(ii) shall apply as appropriate.
        (iv) Where the Buyer fails to pay timely, the Seller has the right to (without prejudice to its rights to receive default/delay compensation) take all appropriate steps to secure and enforce its claim; the Seller may also unilaterally cancel any credit arrangements agreed with/extended to the Buyer.
        (v) All judicial and extrajudicial costs and expenses, including pre-action costs, fees, expenses and disbursements of the Seller's lawyers/attorneys-at-law, incurred in connection with non payment or delayed payment or by any other breach by the Buyer of these conditions, shall be for the Buyer's account, immediately payable by the latter to the Seller. In case of litigation, the Buyers shall also pay all the relevant expenses to the Seller, including but without limitation all his reasonable attorneys/lawyers' fees, costs and disbursements.

I.4     Payment shall be deemed to have been made on the date of which the Seller has received the full payment and such is available to the Seller. If payment falls due on a non-business day, the payment shall be made on or before the business day nearest to the due date. If the preceding and the succeeding business days are equally near to the due date, then payment shall be made on or before the preceding business day.

I.5     Any delay in payment of the full sum due shall entitle the Seller to interest at,  the rate of 3 (three) per cent per month (compounded monthly for each month [or part thereof] of non payment) without prejudice to any rights or remedies available to the Seller. Furthermore the Seller is entitled to charge a delayed payment administration fee of USD 1.50 per mton supplied, or the equivalent thereof in local currency, with a minimum administration fee of USD 350.00 for each delivery made. All reasonable attorneys' fees incurred by Seller in connection with the collection of overdue payments shall be for the sole account of the Buyer.

I.6     Payments made by the Buyer in respect of a supply of Bunkers shall at all times be credited in the following order: (1) costs of any kind or nature, including but not limited to legal costs and attorneys' fees, (2) interest and administrational fee, and (3) invoices in their order of age, also if not yet due, or in Seller's sole discretion to specify a payment to any such invoice Seller considers relevant.

I.7     All costs borne by the Seller in connection with the collection of overdue payments, including those of the Seller's own legal and credit department and, including but not limited to, reasonable attorneys' fees, whether made in or out of court and in general all costs in connection with breach of any agreement by the Buyer, including but not limited to reasonable attorneys' fees, shall be for the sole account of the Buyer.

I.8     The Seller shall at all times, in its absolute discretion, be entitled to require the Buyer to provide the Seller what the Seller deems to be proper security for the performance of all of Buyer's obligations under the Agreement. Failing the immediate provision of such security upon Seller's demand, the Seller shall be

entitled to stop any further execution of any agreement(s) between the parties until such time as the Buyer has provided the required security

I 9      Where Bunkers are supplied to a Vessel in addition to any other security the Agreement is entered into and the Goods are supplied upon the faith and credit of the Vessel It is agreed and acknowledged that the sale of Bunkers to the Buyer and/or their acceptance on the Vessel create a maritime lien over the Vessel for the price of the Bunkers (and all interest and costs payable in respect thereof including but not limited to the reasonable attorney's fees) such maritime lien afforded to the Seller over the Vessel In any event any applicable Law shall not prejudice the right of the maritime lien of the Seller afforded hereunder or by any other applicable Law, be it of the place of delivery or the flag of the Vessel or the place of jurisdiction and/or an arrest of the Vessel or otherwise howsoever

I 10     It is mutually agreed that the Bunkers provided by the Seller to the Buyer under the terms of this Agreement have been ordered by the Buyer in the ordinary course of business between Seller and Buyer All payments from Buyer to Seller for Bunkers supplied under this Agreement are deemed to have been made in the ordinary course of business between Seller and Buyer, according to these ordinary business terms agreed between them

## J.      CLAIMS

J 1      In addition to the obligations referred to in Article E 4 and E 5 herein, any claim in connection with the quantity of the Bunkers delivered must be notified by the Buyer or the Master of the Vessel to the Seller or Supplier immediately after completion of delivery in the form of a letter of protest If the Buyer or the Vessel's Master fails to present such immediate notice of protest to the Seller or Supplier such claim shall be deemed to have been waived and shall be absolutely barred for all purposes

J 2      Always without prejudice to Article G 14 herein any and all claims concerning the quality of the Bunkers delivered or time consumed for the entire operation shall be submitted to the Seller in writing within 15 (fifteen) days after delivery with a clear statement as to the nature of the claim(s) along with appropriate supporting documentation failing which any rights to complain or claim compensation of whatever nature shall be deemed to have been waived and absolutely barred for all purposes

J 3      The Buyer shall be obliged to make payment in full and fulfil all other obligations in accordance with the terms of the Agreement and these conditions whether or not it has any claims or complaints If Buyer submits a claim against Seller with respect to the quality or quantity of the products supplied the Seller or the Seller s nominated representative shall be entitled to board the Vessel and investigate the Vessel s records log books engine logs etc and to make copies of any such document the Seller or the Seller s nominated representative may consider necessary for its investigations connected to the case The Buyer shall allow this or where Buyer has chartered the Vessel then the Buyer shall obtain authorization from Owner to allow the herein stated steps and to provide full assistance and support by the Vessel s officers and crew in any such manner the Seller or Seller s nominated representative may require Failure to allow boarding and/or produce required copies of documents and/or lack of full cooperation by the Vessel s officers and crew shall constitute a waiver of the Buyer s claim

J 4      The Seller shall be allowed and the Buyer Owner Officers and Crew onboard the receiving Vessel shall agree and in any way support and cooperate with Seller s representative to draw samples from the Vessel s storage tanks settling tanks and service tank and/or from before and after the Vessel s centrifuges to have extra tests carried out for such samples at independent laboratory

J 5      In each and every case any and all claims of the Buyer shall be timebarred unless arbitration/legal proceedings have been commenced/issued at the competent tribunal/court set forth in Chapter P hereof and served within 12 (twelve) months from the date of delivery of the Bunkers or the date that delivery should have commenced pursuant to the Order Confirmation from the Seller

## K.      LIABILITY – LIMIT TO SELLER'S LIABILITY

K 1      The Seller and/or Supplier shall not be liable for damages of whatever nature including physical injury nor for delay of delivery of Bunkers or services no matter whether such damages or delay have been caused by fault or negligence on the side of the Seller The Seller shall furthermore not be liable for damages or delay as described above when such damages or delay have been caused by the fault or negligence of its personnel representatives Supplier or (sub)contractors

K 2      Liabilities of the Seller for consequential and/or liquidated damages including but not limited to loss of time loss of cargo or charter cancelling date loss of income or profit/earnings are excluded In any event and notwithstanding anything to the contrary herein liability of the Seller shall under no

circumstances exceed the invoice value of the Bunkers supplied under the relevant agreement to the relevant Vessel

K 3     The Buyer shall be liable towards the Seller and herewith undertakes to indemnify the Seller for any and all damages and/or costs suffered or otherwise incurred on the Seller due to a breach of contract and/or fault or neglect of the Buyers its Supplier agents Servants (sub)contractors representatives employees and the officers crews and/or other people whether or not on board of the Vessel(s) The Buyer furthermore undertakes to hold the Seller harmless in case of any third party institutes a claim of whatever kind against the Seller whether direct or indirect relation to any agreement regulated by these terms and conditions Third party shall mean any other (physical or legal) person/company than the Buyer

K 4     No servant supplier or agent of the Seller/Supplier (including independent (sub)contractors from time to time employed by the Seller/Supplier) shall be liable to the Buyer for loss damage or delay while acting in the course of or in connection with its employment and/or agency for the Seller Without prejudice to the above every exemption limitation condition and liberty herein contained and every right exemption from or limit to liability defence or immunity of whatever nature applicable to the Seller or to which it is entitled hereunder shall also be available and shall extend to protect every such servant representative or agent of the Seller and/or the Supplier acting as aforesaid

## L.     EXEMPTIONS AND FORCE MAJEURE

L 1     Neither the Seller nor the Seller s Supplier shall be liable for any loss claim damage delay or demurrage due to any delay or failure in their performance under this Agreement (a) by reason of compliance with any order or request of any government authority or person purporting to act therefore or (b) when supply of the Bunkers or any facility of production manufacture storage transportation distribution or delivery contemplated by the Seller or Supplier is interrupted delayed by congestion or other event (also see Article G 3 above) or by unavailability of product and/or barge equipment or by inadequate resource for any cause whatsoever which interruption delay unavailability or inadequate resources is not within the immediate control of the Seller or the Supplier including (without limitation) if such is caused wholly or partly by labour disputes strikes stoppages lock out governmental intervention wars civil commotion riot quarantine fire flood earthquake accident storm swell ice adverse weather or any act of God Neither the Seller nor the Supplier shall be required to remove any such cause or replace any affected source or supply or facility if doing so shall involve additional expense or a deviation from the Seller s or the Supplier s normal practices Neither the Seller nor the Supplier shall be required to make any deliveries which fall in whole or in part as a result of the causes set out in this Article at any later time

L 2     If the Buyer exercises reasonable diligence the Buyer shall not be liable for failure to receive any particular delivery if prevented therefrom by force majeure The Buyer shall indemnify the Seller or the Seller s supplier for any damage caused by the Buyer the Buyer s agent or employees in connection with deliveries hereunder

L 3     Declaration of Force Majeure shall be given without unduly delay once such event(s) have come to the knowledge of the respective party declaring same However under no circumstances and for no reason whatsoever can Force Majeure entitle the Buyer not to pay promptly any invoice of the Seller

L 3     In the event that the Seller as a result of force majeure can only deliver a superior grade of bunkers the Seller is entitled to offer the said grade and the Buyer must accept delivery thereof and pay the applicable price

L 4     (a)     These Terms and Conditions are subject to variation in circumstances where the physical supply of the Bunkers is being undertaken by a third party which insists that the Buyer is also bound by its own terms and conditions In such circumstances these Terms and Conditions shall be varied accordingly and the Buyer shall be deemed to have read and accepted the terms and conditions imposed by the said third party

(b)     Without prejudice or limitation to the generality of the foregoing in the event that the third party terms include

(i)     A shorter time limit for the doing of any act or the making of any claim then such shorter time limit shall be incorporated into these terms and conditions

(ii)     Any additional exclusion of liability clause then same shall be incorporated mutatis mutandis into these

(iii)     A different law and/or forum selection for disputes to be determined then such law selection and/or forum shall be incorporated into these terms and conditions

(c)   It is acknowledged and agreed that the buyer shall not have any rights against the Seller which are greater or more extensive than the rights of the supplier against the aforesaid Third Party

## M.        BREACH/CANCELLATION

M 1        Without prejudice to any other remedies and rights  the Seller shall have the option immediately to cancel the Agreement in full or in part, or to store or procure the storage of the Bunkers, in whole or in part, for the account and risk of the Buyer and to charge the Buyer the expenses thereby incurred, or to hold the Buyer fully to the agreement, or take any other measures which the Seller deems appropriate without prejudice to its rights of indemnification, without any liability on the side of the Seller, in any one of (but not limited to) the following cases

a)        when the Buyer, for whatever reason, fails to accept the Bunkers
in part or in full at the place and time designated for delivery,

b)        when the Buyer fails in part or in full to comply with its obligations
to pay any amount due to the Seller and/or provide security as
set out in these GTC,

c)        when, before the date of delivery, it is apparent in the opinion
of the Seller that the financial position of the Buyer entails a risk
to the Seller,

d)        when  in case of force majeure  the Seller is of the opinion that
the execution of the agreement should be cancelled

M 2        The Seller may terminate any Agreement with the Buyer in whole or in part, in
its full discretion, upon the breach of any provisions hereof by the Buyer or in the event that the Buyer fails to make or suspends payment  ceases to carry on business, makes an arrangement with its creditors or undergoes any form of bankruptcy  administration  re-organisation or asset rearrangement

M 3        The Seller has the option to immediately cancel the Agreement for the account and risk of the Buyer if at any time the Seller  in its sole discretion  has reasonable grounds to believe that

a)        The Vessel  or

b)        The Charterer of the Vessel  or

c)        The fully or partly Owner(s) of the Vessel  or

d)        Any officers of the Vessel  or

e)        The Operator and/or Manager of the Vessel  or

f)        Any other person or entity in any way related to the Agreement or delivery is/are

1)        Iranian(s)  or

2)        Related in any way to Iran or Iranians  or

3)        Listed on the US OFAC Specially Designated Nationals List  or

4)        Covered by any US  UN  and/or EU sanctions  or

5)        Covered by any sanctions of any other jurisdiction and/or administration

Under no circumstances can the Seller be held liable for any loss  delays  claims or damages of whatever kind suffered by the Buyer due to a cancellation under this Article

The Buyer must inform the Seller immediately the Buyer becomes aware of or has reasons to believe that any of the above items a) to f) in combination with any of the above items 1) to 5) are fulfilled/apply

Should the Buyer breach its obligation to inform the Seller  the Buyer shall fully indemnify and keep the Seller harmless for any damage or loss caused by such breach  including consequential or liquidated damages

M 4        The Buyer acknowledges that any agreements with the Seller and any actions related to such agreements as well as any interaction with third parties related to such agreements are covered by certain anticorruption laws and regulations which can include any anticorruption law  including but not limited to the U S  Foreign Corrupt Practices Act ("FCPA")  and the UK Bribery Act  Therefore  the Buyer declare to comply with all applicable anticorruption laws and regulations and agrees that the Buyer has not  and will not, offer, promise, pay, or authorize the payment of any money or anything of value  or take any action in furtherance of such a payment  whether by direct or indirect means  to any public official or private individual to influence the decision of such person in the performance of his duties to a government or to his company  Any breach of this clause will void the related Agreement and in the sole discretion of the Buyer any other Agreement between the parties, making any claims for payment  delivery or any other obligation of the Seller under this Agreement void  The Buyer is liable for all and any costs or losses incurred by the Seller due to such breach and/or an Agreement becoming void as a consequence

## N.        SPILLAGE, ENVIRONMENTAL PROTECTION

N 1        If a spill occurs while the Bunkers are being delivered  the Buyer shall promptly take such action as is necessary to remove the spilled Bunkers and mitigate the effects of such spill  Without prejudice to the

generality of the foregoing the Seller is hereby authorised by the Buyer in the absolute discretion of the Seller but at the expense of the Buyer to take such measures and incur such expenses (whether by employing its own resources or by contraction with others) as are necessary in the judgment of the Seller to remove the spilled Bunkers and mitigate the effects of such spill The Buyer shall cooperate and render such assistance as is required by the Seller in the course of the action All expenses claims costs losses damages liability and penalties arising from spills shall be borne by the party that caused the spill by a negligent act or omission If both parties have acted negligently all expenses claims losses damages liability and penalties shall be divided between the parties in accordance with the respective degree of negligence The burden of proof to show the Seller's negligence shall be on the Buyer The Buyer shall give the Seller all documents and other information concerning any spill or any programme for the prevention thereof that is required by the Seller or is required by law or regulation applicable at the time and place of delivery

## O.        DELAYS AND CANCELLATIONS

O 1        Notwithstanding anything else to the contrary herein and without prejudice to any rights or remedies otherwise available to the Seller the Buyer by its acceptance of these conditions expressly agrees that Seller has the sole discretion to cancel or to adjust prices in the event the Vessel is suffering a delay exceeding 24 hours from the (last) nomination date

O 2        If the Buyer for whatever reason (including circumstances entirely outside Buyer's control) cancels the Agreement where Order Confirmation has been sent by Seller the Buyer shall be liable for any and all losses suffered and liabilities incurred by the Seller and/or the Supplier as a result of such cancellation including but not limited to barge costs re-storing of the Bunkers and hedging costs and also in Seller s sole option any difference between the contract price of the undelivered product and the amount received by the Seller upon resale to another party or if another buyer cannot be found any market diminution in the value of the product as reasonably determined from available market indexes These losses and liabilities shall be indemnified by a minimum amount of USD 4 000 by way of agreed minimum liquidated damages and shall be indemnified in full if they in total exceed USD 4 000

## P        LAW AND JURISDICTION

P 1        This Agreement shall be governed and construed in accordance with English law
        The 1980 United Nations Convention on Contracts for the International Sale of Goods (CISG) shall not apply
        Except for circumstance referred to in Clause P 5 below all disputes arising in connection with this Agreement or any agreement relating hereto save where the Seller decides otherwise in its sole discretion shall be finally settled by arbitration in London England in accordance with the Arbitration Act 1996 (or any subsequent amendment)

P 2        In the event that the Seller determines to refer any dispute to arbitration it shall be referred to a tribunal of three arbitrators consisting of one arbitrator to be appointed by the Seller one by the Buyer and one by the two arbitrators already appointed Each member of the tribunal shall be a full member of The London Maritime Arbitrators Association (the LLMA ) Either party may call for Arbitration by service of written notice specifying the name and address of the arbitrator appointed and a brief description of the dispute(s) or difference(s) to be the subject of the Arbitration If the other party does not within 14 days serve notice of appointment of an arbitrator to arbitrate the dispute(s) or difference(s) then the first moving party shall have the right without further notice to appoint its own arbitrator as sole arbitrator and shall subsequently advise the other party accordingly The award of the sole arbitrator shall be binding on both parties as if he had been appointed by agreement Provided each party appointed their own arbitrator then these two arbitrators shall jointly appoint the third arbitrator In the event that the two arbitrators fail to appoint a third arbitrator within twenty days of the appointment of the second arbitrator either party may apply to the English courts for the appointment of a third arbitrator
        Any disputes to be referred to Arbitration are to be determined in accordance with the current LMAA terms unless the parties agree otherwise

P 3        Nothing herein shall prevent the parties agreeing in writing to vary these provisions to provide for the appointment of a sole arbitrator

P 4        In cases where neither the claim nor any counterclaim exceeds the amount of USD 100 000 (or such other sum as the parties may agree) the Arbitration shall be conducted in accordance with the LMAA Small Claims Procedure current at the time when the arbitration proceedings are commenced

P 5        The General Maritime Law of the United States shall always apply with respect to the existence of a maritime lien regardless of the country in which Seller takes legal action Seller shall be entitled to assert

its rights of lien or attachment or other rights, whether in law, in equity or otherwise, in any jurisdiction where the Vessel may be found.

Without prejudice to any other Clause herein any disputes and/or claims arising in connection with these conditions and/or any Agreement governed by them, any dispute and/or claim arisen in connection with a Vessel detained by Seller at any port, place or anchorage within the United States shall be submitted to the United States District Court for the Southern District of New York.

P.6    If any procedure of any nature whatsoever is instituted under Clause P.5 above, in connection with any controversy arising out of this Agreement or to interpret or enforce any rights under this Agreement, the prevailing party shall have the right to recover from the losing party its reasonable costs and attorneys' fees incurred in such proceeding.

**Q.    VALIDITY**

Q.1    These terms and conditions shall be valid and binding for all offers, quotations, prices and deliveries made by the O.W. Bunker Group, any associated company, representative or agent as of September 1, 2013, or at any later date.

Q.2    These terms and conditions are available at the website www.owbunker.com, on which site as well the Sellers may notify amendments, alterations, changes or verifications to same. Such amendments, alterations, changes or verifications are deemed to be a part of the entire terms once same have been advised on the website.